383 A.2d 174

**COMMONWEALTH of Pennsylvania**

**v.**

**Gerard Paul McKENNA, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued April 19, 1977.

Decided Jan. 26, 1978.

Reargument Denied March 3, 1978.

430

Thomas A. Walrath, Wellsboro, Leonard J. Frawley, Public Defender, Towanda, William A. Hebe, Wellsboro, for appellant.

W. Marshall Dawsey, Bradford County Dist. Atty., Towanda, Arthur R. Shuman, Jr., Philadelphia, for appellee.

NAACP Legal Defense Fund, Inc., Norris E. Gelman, Philadelphia, for amicus curiae.

Before EAGEN, C. J., and O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant, Gerard Paul McKenna, was convicted on December 9, 1974 by a jury of murder of the first degree, and rape. A sentencing proceeding was then conducted[1] and after being charged on the penalty, the jury fixed the penalty at death. Timely post-trial motions were filed and in due course denied. On October 16, 1975 appellant was sentenced to imprisonment for a term of 10–20 years on the rape charge and to death on the murder conviction. This appeal followed.[2]

McKenna alleges some nine trial errors, any one of which, he argues, requires the grant of a new trial. Having carefully reviewed the record, we find merit in none of these claims of error and affirm the convictions of murder and rape.[3] It remains to determine whether the sentence of

1. The applicable death penalty statute at that time was a section of the Crimes Code, 18 C.P.S.A. § 1102. The Code was enacted December 6, 1972, and became effective June 6, 1973. Section 1102 provided simply:

 "A person who has been convicted of a murder of the first degree shall be sentenced to death or to a term of life imprisonment."

 Because of the lack of any procedural guidelines in the Code relative to the choice of penalty as between life imprisonment and death, the trial court conducted a bifurcated procedure similar to that which was required under the former statute, the Penal Code, Act of June 24, 1939, P.L. 872, § 701, *as amended,* 18 P.S. § 4701. The death penalty provisions of the Act of 1939 were held to be unconstitutional in the case of *Commonwealth v. Bradley,* 449 Pa. 19, 295 A.2d 842 (1972). See discussion *infra.* The trial court also took notice of the fact that a bifurcated proceeding was also required by the statutory scheme enacted to supplement § 1102 of the Crimes Code (see n. 8, *infra*), although that statute was not applicable to McKenna's trial because of the statute's effective date (see n. 13, *infra*).

2. We hear this appeal pursuant to The Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, 17 P.S. § 211.202(1) which places jurisdiction in this Court for the appeal from appellant's murder conviction. This Court has jurisdiction over the appeal from the related rape conviction by virtue of its transfer from the Superior Court to this Court.

3. In appellant's brief the following nine issues are raised: (1) the indictment was improper; (2) the trial court abused its discretion in

death was lawfully imposed with respect to the murder conviction. We hold not.

Following the return of the jury's verdict that the death penalty should be imposed, appellant filed a motion in arrest of judgment, a motion for a new trial and a motion to remand sentence to life imprisonment. Some four months later, however, and before decision by the trial court, appellant withdrew his motion to reduce the sentence to life imprisonment; he continued to press his other motions. Thus there is not before us any challenge by appellant to the constitutionality of the statute under which he has been sentenced to death.[4] That question has been presented only

denying appellant's motion for a change of venue due to pre-trial publicity; (3) bail pending trial was improperly refused to defendant's prejudice; (4) the trial court abused its discretion in denying a defense motion for a continuance because of the unavailability of a witness; (5) the trial court erred during the *voir dire* examination when it denied seven challenges for cause made by the defense to the qualifications of the jurors; (6) two prior crimes of similar character committed by the appellant were improperly admitted into evidence; (7) defendant was prejudiced by the failure of the prosecution to introduce evidence of a third prior crime although during the *voir dire* examination mention had been made of three prior crimes; (8) the trial court erred in its denial of appellant's motion to suppress certain evidence; and (9) the special prosecutor was guilty of misconduct. We see no jurisprudential need to discuss any of these assertions of error in this opinion.

Additionally, we have an independent responsibility to review the evidence to determine whether the record is sufficient to support a finding of murder in the first degree. *See* the Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187 (1964). This we have done and are satisfied there is sufficient evidence to support the verdict.

4. In this respect, the case at bar is similar to *Gilmore v. State of Utah,* 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976). There the Supreme Court of the United States held that it was without jurisdiction to consider the constitutionality of the Utah death penalty statute because Gilmore had knowingly, intelligently and voluntarily waived his rights to appellate review.

The similarity to *Gilmore* is but superficial; that case is in no way controlling here. First, while states may not erect procedural bars to federal substantive rights, the Supreme Court of the United States has recognized the power of the states to consider a federal issue although it has been waived in the trial court. See *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Second, and more important, the *Gilmore* case was predicated upon the fact that Gilmore had waived all of his appellate rights and that there was thus no jurisdiction in the Supreme Court to consider

by the amicus curiae,[5] whose standing to do so is open to question.[6] We cannot, however, be blind to the fact that for the reasons set forth hereafter the statutory provision under which sentence was imposed, *see* n.1, *supra,* is void on its face. We must therefore ask ourselves whether we can allow this appellant to be executed under such a statute. We have concluded that the sentence cannot stand and must be vacated, appellant's professed desire to the contrary notwithstanding.

I.

In 1972, the Supreme Court of the United States in the case of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) ruled that in order to be valid a death penalty statute cannot leave unbridled discretion in the sentencing body to determine whether or not a sentence of death should be imposed in a particular case. In *Commonwealth v. Bradley,* 449 Pa. 19, 295 A.2d 842 (1972), this Court, in light of the *Furman* decision, struck down the Pennsylvania statute then in effect[7] as violative of the

the Utah death penalty. Here, in contrast, appellant has exercised his appellate rights and this Court is lawfully vested with jurisdiction of his appeal (see n. 2, *supra*). The only question before us, therefore, is one of state appellate procedure, viz. what issues may be considered by this Court when a case is properly before it.

5. In addition to the briefs filed by the parties, briefs as amici curiae have been filed by the NAACP Legal Defense and Education Fund, Inc., contesting the validity of the death statute; and by one Elizabeth Cartwright in support of reversal on the ground of the asserted trial errors.

6. See *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975); *Pierro v. Pierro,* 434 Pa. 131, 252 A.2d 652 (1969); *Commonwealth v. Smith,* 409 Pa. 521, 187 A.2d 267 (1963).

7. Act of June 24, 1939, P.L. 872, § 701, *as amended,* 18 P.S. § 4701. That statute provided in relevant part:

"Whoever is convicted of the crime of murder of the first degree is guilty of a felony and shall be sentenced to suffer death in the manner provided by law, or to undergo imprisonment for life, at the discretion of the jury trying the case, which shall, in the manner hereinafter provided, fix the penalty. In the trial of an indictment for murder, the court shall inform the jury that if they

Eighth and Fourteenth Amendments of the Constitution of the United States. The *Bradley* decision was virtually fore-ordained by the Supreme Court of the United States when, on the same day that it announced its decision in *Furman,* the Court vacated sentences under § 701 of the Act of 1939, *supra.* See *Phelan v. Brierly,* 408 U.S. 939, 92 S.Ct. 2875, 33 L.Ed.2d 762 (1972); *Scoleri v. Pennsylvania,* 408 U.S. 934, 92 S.Ct. 2852, 33 L.Ed.2d 747 (1972). Thereafter, at least six decisions of this Court have made it abundantly clear that a statute which gave such discretion to the jurors as was bestowed by the Act of 1939, *supra,* could not pass constitutional muster. See *Commonwealth v. Martin,* 465 Pa. 134, 348 A.2d 391 (1975) (plurality opinion); *Commonwealth v. Dobrolenski,* 460 Pa. 630, 334 A.2d 268 (1975); *Commonwealth v. Scoggins,* 451 Pa. 472, 304 A.2d 102 (1973); *Com-*

find the defendant guilty of murder in the first degree, it will be their further duty to fix the penalty therefor, after hearing such additional evidence as may be submitted upon that question. Whenever the jury shall agree upon a verdict of murder of the first degree, they shall immediately return and render the same, which shall be recorded, and shall not thereafter be subject to reconsideration by the jury, or any member thereof. After such verdict is recorded and before the jury is permitted to separate, the court shall proceed to receive such additional evidence not previously received in the trial as may be relevant and admissible upon the question of the penalty to be imposed upon the defendant, and shall permit such argument by counsel, and deliver such charge thereon as may be just and proper in the circumstances. The jury shall then retire and consider the penalty to be imposed and render such verdict respecting it as they shall agree upon. A failure of the jury to agree upon the penalty to be imposed, shall not be held to impeach or in any way affect the validity of the verdict already recorded, and whenever the court shall be of opinion that further deliberation by the jury will not result in an agreement upon the penalty to be imposed, it may, in its discretion, discharge the jury from further consideration thereof, in which event if no retrial of the indictment is directed, the court shall sentence the defendant to life imprisonment upon the verdict theretofore rendered by the jury, and recorded as aforesaid. The court shall impose the sentence so fixed as in other cases. In cases of pleas of guilty, the court where it determines the crime to be murder of the first degree, shall, at its discretion, impose sentence of death or imprisonment for life. Where a sentence of death is imposed, the clerk of the court, wherein conviction takes place, shall, within ten (10) days after such sentence of death, transmit a full and complete record of the trial and conviction to the Governor."

*monwealth v. Ross,* 449 Pa. 103, 296 A.2d 629 (1972); *Commonwealth v. Lopinson,* 449 Pa. 33, 296 A.2d 524 (1972); *Commonwealth v. Sharpe,* 449 Pa. 35, 296 A.2d 519 (1972).

Apparently in response to the void in Pennsylvania law regarding the imposition of a death penalty left in the wake of *Bradley,* the General Assembly included § 1102 in the New Crimes Code (see n.1, *supra*). That section, stark in its brevity, was distinguished by a complete lack of direction as to the circumstances that would warrant imposition of the death penalty. In contrast to the elaborate mechanism of the Act of 1939, *supra,* n.7, the new legislation provided only that "[a] person who has been convicted of murder of the first degree shall be sentenced to death or to a term of life imprisonment." It is manifest that in no way could § 1102 have been designed to cure the constitutional infirmities of the Act of 1939. It would seem, instead, that § 1102 had no purpose other than to provide some legislative authority for the imposition of a death sentence until the General Assembly could formulate an adequate response to the implications of the *Furman* decision.[8] But because § 1102 leaves totally

**8.** The *Furman* decision evoked a wide legislative reaction throughout the United States, with some thirty-five states adopting new death penalty statutes. The remedial legislation invariably took one of two forms. The first type provided for mandatory sentences of death for specified crimes (this type of statute was later found unconstitutional in *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)). The second general form of statute provided for specific aggravating and mitigating circumstances which would direct the jury to a less arbitrary and capricious imposition of the death penalty (a statute of this sort was approved in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and a number of companion cases handed down the same day). The new Pennsylvania provision here before us could not arguably fall into either category; it was simply an abbreviated form of the unconstitutional Act of 1939 which it replaced, and more procedurally defective because of the abbreviation.

On March 26, 1974, the Crimes Code was amended to provide for sentencing in conjunction with Section 1311 of a newly enacted Sentencing Code, 18 C.P.S.A. § 1301, *et seq.* Under the scheme there provided, a death sentence could not be imposed until an independent examination was conducted by the factfinder to determine the presence or absence of specific aggravating and mitigating circumstances. *See* the Act of December 6, 1972, P.L. 1482, No. 334, § 1311 added March 26, 1974, P.L. 213, No. 46, § 3 effective immediately.

unbridled discretion in the finders of fact to determine whether execution or life imprisonment is the proper penalty, it was clearly within the interdiction of our *Bradley* decision and the other Pennsylvania progeny of *Furman* cited above.

■ The only argument presented by the Commonwealth in support of the validity of the Act of 1972 is that it was not, in the instant case, applied in an arbitrary or discriminatory manner. We have previously considered and rejected a similar argument in *Commonwealth v. Dobrolenski, supra,* and in *Commonwealth v. Martin, supra,* which followed *Dobrolenski.* In *Dobrolenski,* we stated:

"The Commonwealth's principal contention is that the application of the death penalty in Pennsylvania has not been arbitrary, capricious, or discriminatory. It argues that this history saves the statute in effect at the time of these murders from the ban of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

We have repeatedly held that *Furman* precludes imposition of the death penalty under the statute in question. *Commonwealth v. Scoggins,* 451 Pa. 472, 481, 304 A.2d 102, 108 (1973); *Commonwealth v. Ross,* 449 Pa. 103, 105, 296 A.2d 629, 630 (1972); *Commonwealth v. Lopinson,* 449 Pa. 33, 34, 296 A.2d 524, 525 (1972); *Commonwealth v. Sharpe,* 449 Pa. 35, 44, 296 A.2d 519, 524 (1972); *Commonwealth v. Bradley,* 449 Pa. 19, 23–24, 295 A.2d 842, 845 (1972); cf. *Commonwealth v. Senk,* 449 Pa. 626, 296 A.2d 526 (1972). The Commonwealth recognizes this but offers an evidentiary record, not present in those cases, purporting to show that there has been no discrimination in the imposition of the death penalty on the basis of race, wealth, or nature of the proceeding leading to conviction (jury trials

We have, in the case of *Commonwealth v. Moody,* Pa., 382 A.2d 442 (1977), struck down this scheme as an impermissible limitation on the mitigating circumstances which a jury might consider. Nevertheless in view of the fact that no direct challenge to the validity of the Act of 1972 had been made prior to the amendments of 1974, it is evident that the General Assembly appreciated the need for further legislative refinement of the 1972 death penalty provision in order that it might withstand a *Furman* analysis.

vs. pleas of guilty). However, as we recognized in the above cases, *Furman* holds that 'the imposition of the death penalty *under statutes, such as here involved,* is violative of the Eighth and Fourteenth Amendments.' *Commonwealth v. Scoggins,* supra, 451 Pa. at 481, 304 A.2d at 108 (emphasis added). Had we viewed evidence of the actual application of the statute as necessary for determination of its constitutionality, we would have directed evidentiary hearings in those cases. As we understand *Furman,* the constitutional prohibition extends at least to all death sentences imposed pursuant to statutes which give the sentencing authority unfettered discretion in imposition of the death penalty. Because this *statute* gives such discretion, the constitution forbids the execution of any death sentences imposed under its authority." 460 Pa. at 642–43, 334 A.2d at 274 (footnotes omitted).

Accordingly, we must and do hold that the death penalty section of the Crimes Code, as enacted in 1972, see n.1, *supra,* is unconstitutional and that the sentence of death imposed upon Gerard McKenna under the statute cannot stand.

## II.

Although we have already concluded that the Act of 1972 is invalid on its face, we must nevertheless address the procedural peculiarity of the present case, namely, that Gerard Paul McKenna has expressly refused to challenge the validity of that statute, or to allow his lawyer to do so.

It is of course elementary that issues not preserved for appellate review or, even if preserved at the trial level, not raised by a party to an appeal, will not be considered by an appellate court. See *Commonwealth v. Williams,* 432 Pa. 557, 248 A.2d 301 (1968); *Zeman v. Borough of Canonsburg,* 423 Pa. 450, 223 A.2d 728 (1966); *Commonwealth v. Stowers,* 363 Pa. 435, 70 A.2d 226 (1950); *Nicola v. American Stores Inc.,* 351 Pa. 404, 41 A.2d 662 (1945). For many years we recognized an exception to that rule, and allowed an appellant to raise an issue on appeal even though not preserved if

the overlooked issue was "basic and fundamental." See, e. g., *Commonwealth v. Jennings*, 442 Pa. 18, 274 A.2d 767 (1971); *In Re Noonday Club of Delaware County, Inc.*, 433 Pa. 458, 252 A.2d 568 (1968); *Commonwealth v. O'Brien*, 312 Pa. 543, 168 A. 244 (1933); *White v. Moore*, 288 Pa. 411, 136 A. 218 (1927). In the case of *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974) however, that exception to the normal rule as it had been applied in criminal cases was abrogated.[9] And in *Commonwealth v. Piper*, 458 Pa. 307, 328 A.2d 845 (1974) the Court held that a failure to object to the validity of a sentence at the time of sentencing foreclosed appellate review of that issue, even though the issue sought to be raised was the constitutionality of the sentencing statute. Thus, where an issue of sentencing is not raised by the defendant until the appeal stage, the appellate court should not consider the issue.[10] Implicit in this concept is another cardinal rule of appellate jurisprudence in this state, viz., an appellate court is not to raise *sua sponte* issues which it perceives in the record where, as here, those issues are not presented at the appeal level. See *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975). For the reasons hereafter discussed, however, we decline to apply the rationale of these several cases in a situation where a finding of waiver will result in the imposition of a sentence of death by the Commonwealth of Pennsylvania in a manner clearly contrary to the express law of the land.[11]

**9.** Prior to the *Clair* decision we had earlier abolished the doctrine of basic and fundamental error with respect to appeals in civil cases. See *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

**10.** There have been instances where this Court has seen fit to address the legality of a sentence despite a failure of the appellant to preserve the issue below. See *Commonwealth v. Riggins*, 474 Pa. 507, 378 A.2d 1229 (1977); *Commonwealth v. Bethea*, 474 Pa. 571, 379 A.2d 102 (1977). See also *Commonwealth v. Lane*, 236 Pa.Super. 462, 345 A.2d 233 (1975).

**11.** Our decision to make a particular limited exception to the general rule requiring that an issue first be considered in the court of common pleas is not without precedent. In *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976) the Court declined to follow *Clair* and *Piper* where the Double Jeopardy Clause was violated by sen-

We recognize, of course, that the doctrine of waiver is, in our adversary system of litigation, indispensable to the orderly functioning of the judicial process. There are, however, occasional rare situations where an appellate court must consider the interests of society as a whole in seeing to it that justice is done, regardless of what might otherwise be the normal procedure.[12] One such situation is surely the imposition of capital punishment. That this is a unique penalty requiring special jurisprudential treatment is a concept now embodied in the statutory law of this Commonwealth. Thus section 1311(g) of the Crimes Code expressly provides that "[a] sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania . . . ."[13] *See also* Rule 1941 of the Pennsylvania Rules

tencing. Again, in *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976), we noted the danger of violating the Double Jeopardy Clause if we were to refuse an appellant a right to challenge a trial court's *sua sponte* ruling of a mistrial simply because the defendant had failed to object to the impropriety of the ruling. See also *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712, 718 n. 7 (1977). If the interests sought to be protected in avoiding excessive or illegal sentences under the Double Jeopardy Clause are deemed sufficient to justify bypassing *Clair* and *Piper*, then *a fortiori*, the public interest in assuring that the death sentence is imposed only in a constitutionally permitted manner presents a yet more compelling justification.

**12.** *See* R. Leflar, Appellate Judicial Opinions (1974) at p. 130:
"'[T]he area of sua sponte consideration is not limited to jurisdictional matters. Other questions are raised and considered by courts on their own motion. Occasionally an appellate court will consider a matter sua sponte because of the demands of justice. This is a reflection of one of the purposes of appellate review—justice for the parties. Such a decision to probe into the case apparently reflects a number of different factors. Among those considered are whether great additional work is involved and whether the matter to be considered sua sponte is clear and overwhelming in its impact. *When the matter involves more than just the individuals, and involves a reflection on the courts and the judicial system, there is more willingness to consider it sua sponte.*'" (Emphasis added.) (Quoting A. Vestal, Sua Sponte Consideration in Appellate Review, 27 Ford.L.Rev. 447, 508–12 (1959)).

**13.** *See* the Act of 1974, March 26, P.L. 213, No. 46, § 3, effective immediately, amended 1974, December 30, P.L. 1052, No. 345, § 1, effective in 90 days. The provisions of this Act are not applicable to

of Appellate Procedure. This is illustrative of a general proposition that while a defendant may normally make an informed and voluntary waiver of rights personal to himself, his freedom to do so must give way where a substantial public policy is involved; in such a case an appeals court may feel fully warranted in seeking to reach an issue.[14] We have no doubt that this is such a case. Because imposition of the death penalty is irrevocable in its finality, it is imperative that the standards by which that sentence is fixed be constitutionally beyond reproach.[15] See *Woodson v. North Carolina*, 428 U.S. 280, 304–05, 96 S.Ct. 2978, 49 L.Ed.2d 944, 961 (1976); see also C. Black, Jr., Capital

the McKenna trial because the homicide occurred in the year 1973, long prior to the effective date of the Sentencing Code. In Pennsylvania there is a presumption that statutes are not to have retroactive effect. *See* the Act of 1972, December 6, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1926. But compare *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

Also apparent in our legislative scheme is a realization that a finding of murder of the first degree, because of the severe consequences attendant upon a conviction for that type of criminal homicide, requires extraordinary scrutiny by this Court. Thus, the Act of 1870, February 15, P.L. 15, § 2, 19 P.S. § 1187 directs this Court to make its own independent review of the record in any case where the verdict is guilty of murder in the first degree in order to determine that sufficient evidence exists to support the conviction.

14. Indeed, the idea that parties litigant cannot waive rights in which the state has an interest is not novel. See *Commonwealth ex rel. Firestone v. Burke*, 175 Pa.Super. 128, 103 A.2d 476 (1954); *People v. Stanworth*, 71 Cal.2d 820, 80 Cal.Rptr. 49, 457 P.2d 889 (1969); 21 Am.Jur.2d, Criminal Law, § 219, p. 259 and cases cited therein. In *United States v. Atkinson*, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1935), the Supreme Court of the United States stated:

"In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, on their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." 297 U.S. at 160, 56 S.Ct. at 392.

15. It is true, of course, that in a technical sense the constitutionality of the death sentence provision of the Act of 1972 has not heretofore been tested. We cannot, however, avoid taking notice that § 1102, *supra*, n. 1, was in effect a reenactment, without any change of substance, of the legislation which the cases cited in the text, see pp. 433–435, *supra*, have previously held to be unconstitutional. Neither the parties nor the amici argue to the contrary.

Punishment: The Inevitability of Caprice and Mistake, 30–35 (1974).

 We conceive then, that in the circumstances of this case we have a duty to uphold the mandates of the constitution over the countervailing considerations of normal appellate procedure. The doctrine of waiver developed not only out of a sense of fairness to an opposing party but also as a means of promoting jurisprudential efficiency by avoiding appellate court determinations of issues which the appealing party had failed to preserve. It was not, however, designed to block giving effect to a strong public interest, which itself is a jurisprudential concern. It is evident from the record that Gerard McKenna personally prefers death to spending the remainder of his life in prison. While this may be a genuine conviction on his part, the waiver concept was never intended as a means of allowing a criminal defendant to choose his own sentence. Especially is this so where, as here, to do so would result in state aided suicide. The waiver rule cannot be exalted to a position so lofty as to require this Court to blind itself to the real issue—the propriety of allowing the state to conduct an illegal execution of a citizen.[16]

 In short, where an overwhelming public interest is involved but is not addressed by the parties, this Court has a duty to transcend procedural rules which are not, in spirit, applicable, to the end that the public interest may be vindicated. Such an overwhelming public interest—insuring that capital punishment in this Commonwealth comports with the Constitution of the United States—is present here.

16. Our brother Nix, in concurrence, justifies the Court's reaching and disposing of the death penalty issue in this case on the theory that we should not acquiesce in the "obvious excess of sentencing power" of the trial court merely "because [that excess] is the wish of the offender." Nix, J., Concurring Opinion, infra, at 442. The court of common pleas, however, was clearly acting within the legislative grant of authority as it then existed. The question which we must confront is whether the then existing grant of power was constitutionally permissible. The only possible manner in which the Court, in the context of the present case, might resolve such a question is to ignore the deliberate waiver and *sua sponte* to reach and decide the matter.

The judgment of sentence for rape is affirmed; the judgment of sentence for murder is vacated and the case remanded for resentencing on that charge.

ROBERTS, J., did not participate in the consideration or decision of this case.

MANDERINO, J., concurs in the result.

NIX, J., filed a concurring opinion.

NIX, Justice, concurring.

I agree that this Court has a responsibility which requires us not to acquiesce in the imposition of a sentence where it is apparent that the tribunal imposing that sanction does not possess the proper legislative authority to do so. I also concur in the view that the legislative enactment under which the instant sentence was imposed[1] is unquestionably constitutionally infirm.[2] My disagreement is directed to the analysis of the majority and the rationale they employ in reaching the result. I therefore concur only in the result.

The majority seeks to resolve the issue presented in a waiver context. In my judgment a waiver analysis is inappropriate and tends to obfuscate the real problem presented. First, our rules of waiver provide a procedural device whereby contentions improperly framed and not previously considered will not be decided.[3] In contrast, we are here called upon to determine the appropriate response where we are

1. 1972, Dec. 6, P.L. 1520, No. 334, § 1, 18 Pa.C.S.A. § 1102 (Eff. June 6, 1973). The full text of this section appears in fn. 1 of the majority's opinion.

2. The reasoning of the majority as to this facet of the appeal echoes the views expressed by this writer in *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442 (1977) (Nix, J., Dissenting Opinion at 240, 382 A.2d at 450).

3. In *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), this Court abrogated prior practice in criminal cases of permitting consideration of questions not properly raised if the issue was "basic and fundamental."

asked to ignore the fact that a court has imposed a sanction in excess of its legitimately prescribed authority.[4] Unlike the concept of waiver, designed to eliminate those questions not properly preserved for resolution, the essence of this controversy reaches the propriety of this Court's acquiescence in an obvious excess of sentencing power of one of its inferior tribunals, because it is the wish of the offender. Here we are not concerned with the preclusion of an issue because it has not been properly considered at an earlier stage of the litigation. Rather, the issue is the propriety of this Court's entertaining a claim for relief where the party who would benefit thereby has knowingly and intelligently requested that we refrain from such consideration.[5]

While the majority's opinion purports to limit itself to situations where there is an attempt to impose the death sentence by patently constitutionally infirm standards, the

4. Although a State has the power to impose a sentence of death, *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), that power can only be effectively exercised if the constitutional standards for the imposition of that sanction are met. *Gregg v. Georgia,* supra; *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). Since the instant statute obviously did not comply with the requisite constitutional standards, it was ineffective in conferring upon our courts the authority to impose the death penalty under it.

5. I am of the view that my insistence upon a precise formulation of the issue presented is more than a quibble but rather is imperative to a proper resolution of the question. While I concede that a similar issue might have arisen in a waiver context, I do not believe that fact alone justifies obliterating the distinction between waiver and sua sponte review. Where there is an absence of sentencing power, see note 4, *supra,* this Court's supervisory power requires that it provide a remedy, even if sua sponte consideration is necessary to effectuate that relief. However, where a tribunal possesses the sentencing authority and is alleged to have misused or abused that authority, then I believe that the normal rules of appellate procedure should obtain and sua sponte review is unwarranted. In any event, the question raised is not whether waiver rules should be relaxed but rather whether this Court charged with its constitutional supervisory authority should sua sponte respond regardless of the wishes of the parties or their diligence in preserving the issue.

reasoning it employs lends itself to much broader application. By starting with the premise that the result sought could only be achieved by a relaxation of our procedural rules relating to waiver, *see Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), and sua sponte appellate consideration, *see Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975), the majority was compelled to seize upon the gravity of the penalty of death as the justification. This suggestion that we are here carving an exception to our normal procedural rules solely because of the awesome nature of the penalty, unnecessarily invites future requests for further relaxation of our rules in death penalty cases.

As I perceive the issue, the controlling consideration is not the fact that the sentence imposed was death. It is unquestioned that death is the most severe and irreversible sanction that our system possesses. However, I do not agree that this fact alone should be the catalyst for the result reached today. In my judgment it would be repugnant to any fair system of jurisprudence to knowingly permit a court to impose a sanction (regardless of its nature) that exceeds that tribunal's authority.[6] This obligation does not arise from the kind of penalty, but rather is mandated by our responsi-

---

6. I do not believe this Court's decision in *Commonwealth v. Piper*, 458 Pa. 307, 328 A.2d 845 (1974) is in conflict with the views expressed here. In *Piper* we declined to consider a claim that the sentence denied the accused equal protection of the law since a male offender would have received a minimum sentence and she did not. The basis for not reviewing the claim was her failure to pursue the claim either in the trial court or the Superior Court. The distinguishing feature of *Piper* is that the validity of the maximum sentence was unquestioned. It is axiomatic in this jurisdiction that the maximum sentence is the legal sentence which determines the length of the State's control over the offender. *Commonwealth v. Butler*, 458 Pa. 289, 328 A.2d 851 (1974); *Commonwealth v. Daniel*, 430 Pa. 642, 243 A.2d 400 (1968). Thus the claim in *Piper* did not amount to an assertion that a court had exceeded its statutory sentencing power or that the legislature was constitutionally proscribed from promulgating such a sanction, but rather the attack was directed to the disparity in the treatment of male and female offenders. We have since had occasion to note that because the minimum merely serves to trigger parole considerations, the female offender benefited from the disparity. *Commonwealth v. Butler*, supra, 458 Pa. at 295–96, 328 A.2d at 855.

bility to preserve the integrity of our judicial system.[7] Whether the improper sanction sought to be imposed is one of death, imprisonment or even fine, is immaterial, the gravamen of the evil is the court's action in imposing a penalty that exceeds its power. For this Court to acquiesce in such an act would constitute a flagrant disregard of the supervisory powers invested in us by the Constitution of this Commonwealth.

7. I agree with the majority that our obligation is not removed by appellant's desire to have us ignore this issue. In this regard we are not concerned with the defendant's welfare, but rather the operation of our system.