STAPLETON, Judge,
concurring:
I concur in the judgment of the Court because Kindler was denied appellate review to which he would have been entitled under the law of Pennsylvania as reflected in Commonwealth v. Galloway, 460 Pa. 309, 333 A.2d 741 (1975), at the time of his escape.
Having once again focused on the Pennsylvania case law in 1984, I also conclude that the rule applied by the Pennsylvania Supreme Court in Kindler’s case was not firmly established and regularly followed at that time for an additional reason— Pennsylvania’s “relaxed waiver rule” for capital cases.
*406 When Kindler escaped in 1984, the Pennsylvania Supreme Court had issued four opinions in which it had applied the relaxed waiver rule. See Commonwealth v. Stoyko, 504 Pa. 455, 475 A.2d 714 (1984); Commonwealth v. Frey, 504 Pa. 428, 475 A.2d 700 (1984); Commonwealth v. Zettlemoyer, 500 Pa. 16, 454 A.2d 937 (1982); Commonwealth v. McKenna, 476 Pa. 428, 383 A.2d 174 (1978). That relaxed waiver rule was first invoked by the Pennsylvania Supreme Court in a 1978 case, Commonwealth v. McKenna. There, McKenna was convicted of first degree murder and rape and was sentenced to death for the murder conviction. On direct appeal, McKenna challenged his conviction but refused to allow his attorney to raise any challenge to the constitutionality of the death sentence because he preferred the death penalty to life imprisonment. Amicus curiae, however, filed briefs challenging the constitutionality of the death penalty statute under which McKenna was sentenced. Although the issue of the death penalty statute’s constitutionality was explicitly waived by McKenna, the Pennsylvania Supreme Court declined to apply usual waiver rules and find that McKenna had waived the issue of the statute’s constitutionality.
The Court based its decision to reach the constitutional claim “expressly” waived by McKenna on the sentence imposed— death — and the public interest in preventing unconstitutional executions. The Court explained:
We recognize ... that the doctrine of waiver is, in our adversary system of litigation, indispensable to the orderly functioning of the judicial process. There are, however, occasional rare situations where an appellate court must consider the interests of society as a whole in seeing to it that justice is done, regardless of what might otherwise be the normal procedure. One such situation is surely the imposition of capital punishment. That this is a unique penalty requiring special jurisprudential treatment is a concept now embodied in the statutory law of this Commonwealth .... This is illustrative of a general proposition that while a defendant may normally make an informed and voluntary waiver of rights personal to himself, his freedom to do so must give way where a substantial public policy is involved; in such a case an appeals court may feel fully warranted in seeking to reach an issue. We have no doubt that this is such a case. Because imposition of the death penalty is irrevocable in its finality, it is imperative that the standards by which that sentence is fixed be constitutionally beyond reproach.
The waiver rule cannot be exalted to a position so lofty as to require this Court to blind itself to the real issue the propriety of allowing the state to conduct an illegal execution of a citizen.
In short, where an overwhelming public interest is involved but is not addressed by the parties, the Court has a duty to transcend procedural rules which are not, in spirit, applicable, to the end that the public interest may be vindicated. Such an overwhelming interest insuring that capital punishment in this Commonwealth comports with the Constitution of the United States is present here.
McKenna, 383 A.2d at 180-81 (citations and footnotes omitted) (emphases added). The Court thus declined to apply ordinary waiver rules in McKenna’s case, found the death penalty statute unconstitutional, and remanded for resentencing.
Four years later, the Pennsylvania Supreme Court again addressed the issue of waiver in a capital case. See Zettlemoyer, 454 A.2d at 937. There, Zettlemoyer was convicted of first degree murder and sen- *407 fenced to death. In his appeal, Zettlemoyer argued, inter alia, that the trial court erred by allowing the Commonwealth to read the indictments of another criminal proceeding to the jury. The Pennsylvania Supreme Court observed that the argument was waived because it was not raised in post-verdict motions. Nevertheless, relying on McKenna, the Court addressed the issue on the merits, explaining that it would “not adhere strictly to [its] normal rules of waiver.” Id. at 955 n. 19. Again, the Pennsylvania Supreme Court explained its application of the relaxed waiver rule as based on the nature of the sentence at issue.
In two cases decided less than six months before Kindler escaped, the Pennsylvania Supreme Court again applied the relaxed waiver rule in capital cases. In both, the Court cited Zettlemoyer in support of its decision not to find waiver and offered no significant alteration of the rule as announced in McKenna and Zettlemoyer.
The Pennsylvania Supreme Court continued to apply the relaxed waiver rule in capital cases on collateral review until 1998 and on direct review until 2001. Although it is not decisive with regard to determining the established law as of 1984, it is notable that the Pennsylvania Supreme Court thereafter continued to explain the relaxed waiver rule as having been “created to prevent [the Court] from being instrumental in an unconstitutional execution.” See Commonwealth v. Albrecht, 554 Pa. 81, 720 A.2d 693, 700 (1998). As of 1984, however, the Pennsylvania Supreme Court had already explicitly and repeatedly stated that its relaxation of its traditional appellate rules in death penalty cases was based on the nature of penalty involved and on the public interest in avoiding unconstitutional executions. Accordingly, it is not surprising that this Court has held that, as of 1981, “McKenna ... rather firmly established that a claim of constitutional error in a capital case would not be waived by a failure to preserve it.” Szuchon v. Lehman, 273 F.3d 299, 326 (3d Cir.2001).
As of 1984, the relaxed waiver rule was applied in Pennsylvania to any constitutional claim of any defendant facing the death penalty, and it was not firmly established that a specific type of waiver — fugitive forfeiture — would cause a Pennsylvania court to decline to apply that rule.