J-S46028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHATEEK BEVERLY | : | |
| | : | |
| Appellant | : | No. 1723 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002530-2018

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                **FILED:  MARCH 31, 2021**

Appellant, Shateek Beverly, appeals from the judgment of sentence imposed on May 17, 2019, after a jury found him guilty of firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and person not to possess or control a firearm.[1]  After careful review, we affirm.

The trial court comprehensively summarized the facts adduced at trial, as follows:

> [O]n March 15, 2018, fully uniformed Police Officer Jeffrey Donahue and his partner, Police Officer Ryndi Green-Coneby, were traveling in a marked vehicle, in the area of the 1100 block of South Frazier Street in response to a radioed report of "two black males inside a black car armed with a gun."  Within a minute of receiving the radio call, the officers arrived at the location where they observed two (2) black cars with only one of the vehicles with occupants.  The engine was running and some

_____

[1] 18 Pa.C.S. §§ 6106, 6108, and 6105, respectively.

windows were tinted. As Officer Donahue exited his vehicle, he could smell a strong odor of burnt marijuana in the air. Approaching from the rear, Officer Donahue could see two people in the front of the vehicle, a black Lexus ES350.

As he walked closer, the officer observed Appellant seated in the driver's seat and shouted at least twice instructions for the driver to show his hands. He observed Appellant ignore his directions and "dip his shoulders forward" in the driver's seat. During his [vivid] trial testimony, Officer Donohue physically demonstrated to the fact-finding jury Appellant's furtive movements that he had observed. That demonstration vividly illuminated Appellant's frantic attempt to hide something under his seat.

Appellant eventually cracked the window about a quarter inch which released smoke and a very pungent odor of marijuana from the vehicle. Due to natural safety concerns, Officer Donahue then instructed Appellant to get out of the vehicle. As Appellant was exiting the vehicle, Officer Donahue could see the back half of a firearm on the driver's side floorboard that had been partially shoved closest to the console.

Appellant was subsequently frisked for the officers' safety and placed in the back of the patrol car. Officer Donahue retrieved a fully loaded and chambered black Taurus G2 9-millimeter firearm from underneath the driver's seat. The positioning of the firearm within the vehicle was displayed to the jury within the introduced photographs. The physical location of the firearm prior to law enforcement retrieval had been with the handle in the front by the driver's feet and the barrel underneath pointed towards the back of the vehicle. This position was consistent not only with Appellant's observed stashing motion but also reflective of the driver as the last natural possessor of that weapon.

Moreover, the firearm's location on the driver's side of the floorboard next [to] the driver's side of the console demonstrated access within the driver's wingspan. The driver's singular possession of the retrieved firearm [that] had been loaded and chambered was also reflected by its location within inches behind and initially blocked by Appellant's right leg and foot and underneath where he had been seated.

It was not until he was retrieving the firearm, that Officer Donahue had noticed the three (3) additional people in the backseat of the vehicle. Officer Donahue explained that the back windshield along with the side rear passenger window had been heavily tinted which had prevented him and Officer Green-Coneby from initially seeing the three (3) people in the backseat. Notably, Appellant had been the only individual that had ignored the Officer's commands. Office Donohue testified that just prior to transportation for arrest processing, another officer thoroughly searched Appellant's black puffy coat that he had been wearing and retrieved a box of ammunition usable for the recovered firearm from the upper right jacket pocket of that coat.

Police Officer Kevin Day testified that on March 15, 2018, at approximately 12:10 p.m., he and his partner, Police Officer Ryan Howell, also responded to the radio call of "two black males inside a black car armed with a gun" on the 1100 block of South Frazier Street. They were in full uniform and in a marked police wagon. Officer Day approached the driver's side of Appellant's vehicle with Officer Donahue and he conducted the pat down of Appellant which revealed a box of ammunition in the right front pocket of Appellant's jacket. Officer Day gave the box [to O]fficer Donahue. Officer Day stated that in his experience, it is uncommon for a person to just carry ammunition.

Next, a stipulation was entered by and between counsel, that Firearm's Identification Unit Examiner, Leticia Buchanan, was an expert in firearms identification, analysis, comparison, and with ammunition. Ms. Buchanan testified that she examined the firearm, which she identified as a Taurus G2c semiautomatic, 9-millimeter that comes with a box magazine that holds 12 plus one in the chamber. She stated that she had also received and analyzed a Sig Sauer box of ammunition; called hollow point "V–Crown" 9-millimeter type of ammunition which she had favorably compared to the same hollow point 9-millimeter type retrieved from the recovered firearm. That firearm was also deemed upon testing to be operable. On cross-examination, Ms. Buchanan stated that DNA testing had not been requested.

* * *

Detective Zachary Jordan testified that he was assigned to the Gun Violence Reduction Task Force with the Southwest Detectives Special Investigations Unit that utilize Facebook, Instagram and YouTube to combat gun crimes in the City.

- 3 -

According to Detective Jordan, in early March of 2018, he had received notification of a video publicly posted by Visionary Films and music producer featuring Appellant, whose social media name was "Teeko Savage." With no objection, the video was displayed during the Detective's testimony to the jury.

Detective Jordan identified Appellant in the video as one of the two adult men rapping while easily handling a semiautomatic weapon; the other man was identified as Domire Crawford, who also held a firearm. Detective Jordan stated that he had been aware of previous videos featuring Appellant and that he had conducted an investigation involving Appellant and firearms on a previous date, which was not the date of the video. Detective Jordon retrieved the social media posting that displayed Appellant's possession and posturing with firearms within a few days prior to Appellant's instant arrest. On cross-examination, Detective Jordan stated that he was not aware of any fingerprint or DNA analysis being conducted on the gun.

Upon completion of the prosecution's case, Appellant testified that on March 15, 2018, at approximately 12:30 p.m., he had been sitting in the driver's seat of a black Lexus, with four (4) other people that had been parked on the street with only the heat on electrically. Appellant stated that the weapon in question belonged to Javon Wallace who was sitting directly behind him in the vehicle and that he had never touched it.

On cross-examination, Appellant testified that the police had been conspiring against him; that it wasn't his gun and that Officer Day did not really retrieve a box of ammunition from his jacket pocket because he was not wearing a jacket when he had been removed from the car and that no one in that vehicle had been smoking any weed. According to Appellant, he and the other four men were just sitting in their friend's car listening to music before the police showed up and interrupted them. After discussion with the court and with counsel, Appellant, outside the presence of the jury, informed the court that he was not going to call Javon Wallace as a witness.

\* \* \*

A stipulation had been further entered by and between counsel that if the Clerk of Courts for the First Judicial District of Pennsylvania, Velma Jones, were called to testify as the authorized records custodian, she would testify that Appellant had

a prior adjudication of delinquency for robbery, graded as a felony of the first degree. That adjudication was docketed by First Judicial District of Pennsylvania Court of Common Pleas under Docket Number CP-51-JV-0002262-2015 with a disposition date of September 18, 2017.

At the conclusion of trial on May 17, 2019, Appellant [was] found guilty by the jury after brief deliberation of the two respective Violations of the Uniform Firearms Act: Firearms not to be Carried without a License; and Carrying Firearms on Public [S]treets or Public Property in Philadelphia. The jury then was asked to decide the final previously bifurcated charge of Violation of the Uniform Firearms Act-Possession of a Prohibited Firearm. The stipulation regarding the testimony of the Clerk of Courts was read to the jury and after deliberation, they found Appellant guilty of that offense as well.

Since Appellant had initially entered a plea of guilty to all charges before the Honorable Diana L. Anhalt, Judge of the First Judicial District of Pennsylvania Court of Common Pleas, on December 5, 2018, the investigative pre-sentence report and mental health evaluation previously ordered by Judge Anhalt had been available and reviewed by this Court. Sharie Beverly, Appellant's mother, and Maria Hurt, Appellant's aunt, both testified on behalf of Appellant. Thereafter, Appellant was sentenced to an aggregate term of six and one-half (6 1/2) to seventeen (17) years of incarceration.[4]

[4] Appellant was sentenced to [a] term of three and one-half (3 1/2) years to seven (7) years of incarceration on the charge of firearms not to be carried without a license; followed by one and one half (1 1/2) to five (5) years of incarceration on each charge of person not to possess or control a firearm and carrying firearms on public streets or public property in Philadelphia.

*A Motion for Reconsideration of Sentence* was filed on June 5, 2019 and [was] subsequently denied on June 11, 2019. Appellant filed a Notice of Appeal on June 12, 2019.

Trial Court Opinion, 5/27/20, at 2–8 (record references and some quotations omitted). Both Appellant and the trial court complied with Pa.R.A.P. 1925.

- 5 -

Appellant raises the following issues for review:

1. Whether the weight of the evidence was enough to sustain a conviction pursuant to Rule 607, and whether the evidence was sufficient to sustain a conviction pursuant to Rule 606 and the weight of the evidence was enough to sustain a conviction pursuant to Rule 607?

2. Whether the Sentencing Court should have sentenced [Appellant] to a "mitigated" sentence on May 17, 2019, yet he was sentenced To Firearms Not to be Carried W/O License, 18 § 6106 §§ A1 F3 Confinement 3 1/2 to 7 years, 18 § 6105 §§ A1 M1 Possession of Firearm Prohibited, Confinement Min. 1 1/2 Year(s) to Max: 5 Year(s): and 18 § 6108 M1 Carry Firearms Public in Philadelphia, Confinement Min: 1 1/2 to Max: 5 Year[s] all to be run consecutively for a minimum of 6 1/2 to 17 years sentence?

3. Whether the evidence of the YouTube video, which shows [Appellant] in the possession of a firearm should have been allowed to be shown to the jury and admitted into evidence?

4. Whether "Constructive Possession" was proven beyond a reasonable doubt?

Appellant's Brief at 6, *verbatim* (renumbered for ease of disposition).

We must initially determine whether Appellant has preserved each of his issues for appellate review. "It [is] 'elementary that issues not preserved for appellate review or, even if raised at the trial level, not raised by a party to an appeal, will not be considered by an appellate court.'" **Commonwealth v. Pitts**, 981 A.2d 875, 879 n.3 (Pa. 2009) (quoting **Commonwealth v. McKenna**, 383 A.2d 174, 179 (Pa. 1978)).

Appellant's first issue challenges the weight and the sufficiency of the evidence supporting his convictions. Both aspects of his argument are waived. As to his weight of the evidence claim, Pennsylvania Rule of Criminal

Procedure 607 governs challenges to the weight of the evidence and provides, in relevant part, as follows:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
>> (1) orally, on the record, at any time before sentencing
>>
>> (2) by written motion at any time before sentencing; or
>>
>> (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). "The purpose of [Rule 607] is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Pa.R.Crim.P. 60, cmt. "If an appellant never gives the trial court the opportunity to provide relief, then there is no discretionary act that this Court can review." *Commonwealth v. Jones*, 191 A.3d 830, 835 (Pa. Super. 2018) (footnote and citation omitted).

In his brief on appeal, Appellant does not contend that he complied with Rule 607. Further, a review of the record confirms that Appellant did not present a weight claim orally on the record or in writing at any time before sentencing or in his motion for reconsideration of sentence. Moreover, in his appellate brief, Appellant's argument consists solely of a recitation of Rule 607 and the case law outlining appellate review of a weight of the evidence claim. Appellant's Brief at 11–12. Accordingly, Appellant's failure to follow the mandates of Rule 607 requires that we find waiver of this issue.

Appellant's general sufficiency of the evidence claim is likewise deficient.[2] This Court has stated, "In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Pa.R.A.P. 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Stiles*, 143 A.3d 968, 982 (Pa. Super. 2016) (quoting *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013)) (internal quotation marks omitted); *see also* Pa.R.A.P. 1925(b)(4)(ii) ("[T]he Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."). "Such specificity is of particular importance in cases where, as here, [A]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Garland*, 63 A.3d at 344. Failure to identify what specific elements the Commonwealth did not prove at trial in a Rule 1925(b) statement renders an appellant's sufficiency-of-the-evidence claim waived for appellate review. *See Commonwealth v. Tyack*, 128 A.3d 254, 261 (Pa. Super. 2015) (finding the appellant's issues waived where "1925(b) statement simply declared, in

_____

[2] Appellant's more specific argument that the evidence was insufficient to demonstrate constructive possession of the firearm at issue is reviewable and will be discussed *infra*.

- 8 -

boilerplate fashion, that the evidence was insufficient to support his conviction").

Here, Appellant posed the following generic question in his Pa.R.A.P. 1925(b) statement: "[W]hether the evidence was sufficient to sustain a conviction pursuant to Rule 606. . . ." Appellant's Pa.R.A.P. 1925(b) Statement, 11/4/19, at 1. Appellant does not specify any element of any of the convictions that the Commonwealth failed to prove beyond a reasonable doubt. Nor does Appellant's "Statement of Questions Involved" identify what element(s) of the convictions he is challenging on appeal. Appellant's Brief at 6. Moreover, in the argument section of his appellate brief, Appellant's sufficiency argument consists of one paragraph describing this Court's standard of review. *Id.* at 12. Based on the foregoing, Appellant has failed to preserve his sufficiency of the evidence challenge for appellate review.

We next address Appellant's sentencing issue. On May 17, 2019, Appellant was sentenced to a term of incarceration of three and one-half to seven years for the conviction of firearms not to be carried without a license, followed by one and one-half to five years of incarceration for both the person not to possess a firearm and carrying a firearm on the streets of Philadelphia convictions. The trial court ordered that all sentences be served consecutively, resulting in an aggregate term of incarceration of six and one-half to seventeen years. N.T. (Sentencing), 5/17/19, at 101.

In his Pa.R.A.P. 1925(b) statement, Appellant phrases his sentencing issue as "whether the sentencing court should have sentenced [Appellant] to a 'mitigated sentence' . . . ." Appellant's Pa.R.A.P. 1925(b) Statement, 11/4/19, at 2. Appellant somewhat expands upon this abbreviated statement in the argument portion of his brief, wherein he claims that the maximum sentence of seventeen years was "widely outside the Sentencing Guidelines." Appellant's Brief at 12. Appellant also posits that the trial court abused its discretion in imposing his sentence because it violated the Pennsylvania Sentencing Code by disregarding "the general principle that the sentence imposed should call for 1) confinement consistent with the protection of the public, 2) the gravity of the offense as it relates to the impact on the life of the victim; and 3) the rehabilitative needs of the defendant. . . ." Appellant's Brief at 13.

A claim that a sentence is excessive is a challenge to the discretionary aspects of a sentence. *Commonwealth v. Ahmad*, 961 A.2d 884, 886 (Pa. Super. 2008) (citation omitted). Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Bradley*, 237 A.3d 1131, 1138 (Pa. Super. 2020) (citing *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000)). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902

and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

Here, Appellant filed a timely notice of appeal and a motion to reconsider sentence *nunc pro tunc*.[3] Appellant represented that the motion was filed late because of a death in trial counsel's family. While Appellant's brief does not include a Pa.R.A.P. 2119(f) statement, the Commonwealth did not object to the statement's absence. Therefore, we will not find it waived on the basis that the brief does not include the statement. ***Commonwealth v. Brougher***, 978 A.2d 373, 375 (Pa. Super. 2009). Finally, Appellant's argument that the trial court abused its discretion in imposing his sentence because it failed to consider the sentencing factors outlined in 42 Pa.C.S. §9721(b) raises a substantial question. ***See Commonwealth v. Cartrette***, 83 A.3d 1030, 1042, 1043 (Pa. Super. 2013) (substantial question presented where appellant alleges sentence manifestly excessive because court did not consider all sentencing factors). Thus, we will review the substantive merits of Appellant's claim.

_____

[3] On June 11, 2019, the trial court granted Appellant's petition to file a motion for reconsideration of sentence *nunc pro tunc*. On that same date, the trial court denied the motion on its merits.

At sentencing, the Commonwealth noted that the sentencing guideline for the carrying firearms without a license charge was thirty-six to forty-eight months imprisonment plus or minus twelve months. N.T. (Sentencing), 5/17/19, at 90. The sentencing guideline for both person not to possess firearms and for carrying a firearm in a public street in Philadelphia was nine to sixteen months incarceration plus or minus three. *Id.* at 84. The trial court imposed the Commonwealth-recommended three and-one-half to seven year penalty for the main charge and one and one-half to five years on each of the other two firearms convictions. Although the trial court represented that each of these sentences was "within the recommended standard range of sentencing," Trial Court Opinion, 5/27/20, at 32, the eighteen-month minimum sentence for the non-leading offenses was actually within the aggravated range. Nonetheless, the sentence was not a deviation from the Sentencing Guidelines as Appellant suggests. Appellant's Brief at 12; *see Commonwealth v. Bowen*, 975 A.2d 1120, 1128 (Pa. Super. 2009) (sentence falling within aggravated range constitutes a sentence within the guidelines).

We further conclude that Appellant's assertion that his maximum sentence was outside the Sentencing Guidelines is irrelevant. The Sentencing Guidelines recommend ranges of **minimum** sentences based on the type of offense, the defendant's prior criminal history, and certain aggravating and

mitigating factors. *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007).

Appellant's companion claim that the trial court failed to consider the sentencing factors in 42 Pa.C.S. § 9721, likewise is meritless. It is well settled that when the trial court has the benefit of a presentence investigation ("PSI") report, it is presumed that the court was both aware of and appropriately weighed all relevant information contained therein. *Commonwealth v. Griffin*, 804 A.2d 1, 8 (Pa. Super. 2002). Herein, the trial court informed Appellant that the reasons for the length of the sentence included: Appellant's "extreme violence" and "extreme indications of very compulsive behavior" in his actions underlying his prior juvenile dispositions for aggravated assault and robbery; the "proud way [Appellant] displayed an intent to commit violence" depicted in the YouTube video played at trial; prior attempts at rehabilitation "haven't worked" due to Appellant's "refusal to change"; Appellant declined a meeting with the presentence investigator; Appellant did not "accept responsibility" for his crimes; and Appellant is a "clear and present danger to the community." N.T. (Sentencing), 5/17/19, at 94–98. Therefore, Appellant's argument that the trial court failed to consider the 42 Pa.C.S. § 9721 (b) sentencing factors is belied by the record and merits no relief.

Finally, to the extent that Appellant is unhappy with the duration of his incarceration due to the consecutive nature of the sentences, the decision to order sentences to run concurrently or consecutively is left to the discretion

of the trial court. **Commonwealth v. Radecki**, 180 A.3d 441, 470 (Pa. Super. 2018). An appellant is not entitled to a "volume discount" for his crimes by having all of his sentences run concurrently. **Commonwealth v. Hoag**, 665 A.2d 1212, 1214 (Pa. Super. 1995). "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." **Moury**, 992 A.2d at 171–172 (citation omitted). Herein, Appellant has not asserted any "extreme circumstances." **Radecki**, 180 A.3d at 470. We conclude that the trial court acted within its discretion in imposing consecutive sentences after reviewing the facts of the case, Appellant's history, relevant sentencing factors, and the PSI report.

Appellant's next issue involves the admission of a YouTube video depicting Appellant performing a rap song while brandishing a firearm. On December 4, 2018, the trial court held a hearing on the Commonwealth's motion to introduce other acts evidence. The motion requested that the Commonwealth be permitted to introduce the "Testimony of Detective Zachary Jordan relating to a YouTube Video titled 'Teeko Savage Featuring Daz Raw Ready For War (Remix),' which was published on March 11, 2018," four days before Appellant was arrested on the present charges. Motion,

12/3/18, at unnumbered 1, 4.[4] The motions court granted the motion, and the video was played before the jury during trial.

On appeal, Appellant maintains that the video was admitted in violation of Pa.R.E. 404(b). Rule 404(b) instructs, in relevant part, that although "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," it may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Pa.R.E. 404(b)(1) and (2). In criminal matters "this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b).

In his brief, Appellant contends, without elaboration, that admission of the video was prejudicial because it demonstrated that Appellant "had a propensity to commit crimes." Appellant's Brief at 8. Appellant does not, however, identify any error in the motions court's reasoning that the video was admissible because "it tended to prove that [Appellant] had a weapon similar to the one in [perpetration] of the crime[s] he is currently charged with." N.T. (Motion), 12/4/18, at 9. Although the motions court recognized that the weapon in the video was not the same as the weapon involved in the subject crimes, "it still shows access to weapons." *Id.*

---

[4] Teeko Savage is Appellant's social media name. N.T. (Trial), 5/15/19, at 114.

Appellant also argues that the Commonwealth failed to present sufficient evidence of constructive possession. Appellant's Brief at 10. Appellant asserts that the Commonwealth failed to prove he exercised control or dominion over the firearm because "there were five persons in the vehicle" where the firearm was discovered, Appellant did not own or operate the car, and Appellant cooperated with the responding officer. *Id.* Appellant also contends that "Officer Roller's testimony that [A]ppellant made a movement toward the left rear of the vehicle" does not "provide proof beyond a reasonable doubt that [A]ppellant possessed the firearm in question." *Id.*

We have considered the arguments of the parties, the relevant law, and the complete record. The trial court aptly addressed Appellant's evidentiary and constructive possession issues in its May 27, 2020 Pa.R.A.P. 1925(a) opinion. We thus rely on the trial court's opinion in concluding that these issues lack merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/21