

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-16-1996

# Duffey v. Lehman

Precedential or Non-Precedential:

Docket 94-9003

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Duffey v. Lehman" (1996). *1996 Decisions.* Paper 246.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/246

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 94-9003

————————

STEVEN DUFFEY,

<u>Appellant</u>

vs.

JOSEPH D. LEHMAN, Commissioner of the
PA Department of Corrections;
WILLIAM J. LOVE, Superintendent of the
State Correctional Institution at Huntingdon;
JOSEPH P. MAZURKIEWICZ, Superintendent of
the State Correctional Institution at Rockview

————————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 94-cv-01947)

————————

Argued
October 26, 1995
Before:  MANSMANN, COWEN and LEWIS, <u>Circuit</u> <u>Judges</u>.

(Filed January 16, 1996)

————————

Billy H. Nolas, Esquire
Robert B. Dunham, Esquire (ARGUED)
Pennsylvania Post-Conviction
  Defender Organization
437 Chestnut Street
Suite 501
Philadelphia, PA  19106

  COUNSEL FOR APPELLANT

Michael J. Barrasse, Esquire
William P. O'Malley, Esquire (ARGUED)
Office of the District Attorney
200 North Washington Avenue
Lackawana County Courthouse
Scranton, PA  18503

  COUNSEL FOR APPELLEE

---

OPINION OF THE COURT

---

MANSMANN, <u>Circuit</u> <u>Judge</u>.

In this case of first impression, we are called upon to interpret and apply the United States Supreme Court's admonition in <u>McFarland v. Scott</u>, ___ U.S. ___, 114 S. Ct. 2568 (1994), that a district court would not abuse its discretion in denying a stay of execution pending the presentation of a federal habeas petition to a "dilatory" defendant who "inexcusably ignores [the] opportunity [for counsel and for that counsel meaningfully to research and present a defendant's habeas claims] and flouts the available processes . . . ." <u>Id.</u> at 2573. We hold that under <u>McFarland</u>, a district court may properly refuse a stay to a dilatory defendant who has waived his right to counseled and meaningful habeas review and his state court remedies. Since here, however, the defendant, even though dilatory, did not waive his rights or remedies, we hold that the district court's decision to deny him a stay of execution was not consistent with a sound exercise of discretion.

I.

In the afternoon of February 19, 1984, Kathy Kurmchack, then 19 years of age, was found stabbed to death in a restroom in the restaurant where she worked. Steven Duffey was charged with the killing.

2

On February 6, 1985, a jury found Duffey guilty of first degree murder. Following the denial of post-verdict motions, Duffey was formally sentenced, on August 4, 1986, to death. The Pennsylvania Supreme Court affirmed Duffey's conviction and sentence on October 14, 1988. Commonwealth v. Duffey, 519 Pa. 353, 548 A.2d 1178 (1988).

On September 22, 1994, Governor Robert P. Casey signed a death warrant scheduling Duffey's execution for the week of December 4, 1994. On October 12, 1994, Duffey met with attorneys from the Pennsylvania Capital Case Resource Center (the "Resource Center") and signed an unsworn declaration of indigency and a request that the Resource Center seek a stay of execution and the recruitment of competent counsel to commence state post-conviction proceedings on his behalf.

Unable to recruit counsel, on November 16, 1994, the Resource Center filed in the trial court a pro se motion for a stay of execution to identify and appoint counsel for Duffey. The motion was denied on November 18, 1994; a motion for reconsideration was denied on November 22, 1994.

Believing that the trial court's denials were predicated on its view that it lacked jurisdiction to stay Duffey's execution in the absence of a petition filed under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 et seq., the Resource Center then filed a "Renewed Pro Se Motion for Stay of Execution to Permit Counsel Time to Prepare PCRA Petition", to which a "form" PCRA petition raising the issue of ineffective assistance of counsel was

3

attached.  On or about November 22, 1994, the trial court denied the motion for stay based on the "frivolous" nature of the PCRA petition and Duffey's delay in asserting the ineffectiveness of counsel claim.  An appeal of the trial court's order was taken to the Pennsylvania Supreme Court on November 28, 1994.

That same day, Duffey filed a "Motion to Proceed In Forma Pauperis, for a Stay of Execution, and for Appointment of Federal Habeas Corpus Counsel under 28 U.S.C. § 2251 and 21 U.S.C. § 848(q) -- and -- Complaint for Injunctive Relief under 42 U.S.C. § 1983"[0] in the United States District Court for the Middle District of Pennsylvania, naming as respondents several officials with the Pennsylvania Department of Corrections.[0] Expressing its strong hesitation to take any action while Duffey's request for a stay to pursue his state remedies was pending before the Pennsylvania Supreme Court, the district court reserved ruling on the motion.

After the Pennsylvania Supreme Court denied Duffey's request for a stay on December 5, 1994, the district court issued a memorandum opinion and order, permitting Duffey to proceed in forma pauperis and granting Duffey's request for the appointment of federal habeas corpus counsel.[0]  With regard to Duffey's

---

[0]    Duffy's claim under 42 U.S.C. § 1983 was dismissed without prejudice on December 22, 1994.

[0]    The respondents, the appellees here, refer to themselves in their brief as the "Commonwealth [of Pennsylvania]."  We will adopt that designation.

[0]    We understand that Duffey is presently represented by legal counsel.  We also understand that on or about April 27, 1995, counsel filed an "Amended Petition for Post-Conviction Collateral Relief" in the Court of Common Pleas of Lackawana

4

request for a stay of execution, the court interpreted the United States Supreme Court's decision in <u>McFarland v. Scott</u>, ___ U.S. ___, 114 S. Ct. 2568 (1994), as holding that a stay was required unless Duffey "inexcusably ignored post-conviction remedies for the purpose of delaying his execution."  Finding the record undeveloped in this regard, the court issued a temporary stay until December 23, 1994, to allow the parties the opportunity to submit evidence as to whether Duffey's six-year "delay" in invoking post-conviction review was justifiable.

After a hearing, the court held that Duffey was not entitled to a stay of execution pending habeas review.  The court found that Duffey was aware that state and federal collateral review procedures are available to capital defendants; that Duffey knew that he no longer had legal representation and that a collateral challenge to his conviction and sentence was not being mounted on his behalf following the Pennsylvania Supreme Court's affirmance of his conviction and sentence; that Duffey was capable of deciding and had decided to delay the invocation of the post-conviction process in order to forestall the imposition of his sentence; and that the Resource Center had proceeded in this matter in good faith.  Seeing no evidence in the record to support a finding that the Commonwealth had interfered with Duffey's rights or that Duffey was incompetent, the court further found that Duffey had not shown "cause" either for his "deliberate decision" not to challenge his conviction and

County, Pennsylvania.  The status of this petition is not before us, nor is it relevant to the issues raised in this appeal.

5

sentence until a death warrant had issued or for "ignoring" post-conviction remedies.  The court, therefore, concluded that under McFarland v. Scott, ___ U.S. ___, 114 S. Ct. at 2573, Duffey's inaction was "inexcusable" and constituted a "flouting of the available processes".  Accordingly, the court denied Duffey's request for a stay pending preparation of a petition for a writ of habeas corpus and vacated the temporary stay it had granted on December 5, 1994.  Duffey's appeal followed.[0]

II.

In McFarland v. Scott, ___ U.S. ___, 114 S. Ct. 2568 (1994),[0] the Supreme Court was presented with a two-pronged

---

[0]     We granted a temporary stay of execution pending this appeal.

[0]     Frank Basil McFarland was convicted of murder in the State of Texas and sentenced to death.  Two months after the final resolution of McFarland's direct appeal, the Texas trial court scheduled his execution.  Unable to secure either the appointment of counsel or a modification of his execution date in the trial court for state habeas corpus proceedings, McFarland filed a pro se motion in a federal district court, alleging that he "wish[ed]" to challenge his conviction and sentence under the federal habeas corpus statute.  McFarland v. Scott, ___ U.S. ___, 114 S. Ct. 2568, 2570 (1995).  McFarland also asked for the appointment of counsel under 21 U.S.C. § 848(q)(4)(B), and a stay of execution to enable counsel to prepare and file a habeas corpus petition.  Id.  Of the view that a "post conviction proceeding" had not been initiated under 28 U.S.C. § 2254 or §2255, the district court denied McFarland's motion on the grounds that McFarland was not entitled to the appointment of counsel and that it lacked jurisdiction to enter a stay of execution.  Id. at 2571.  Affirming, the United States Court of Appeals for the Fifth Circuit noted that under 28 U.S.C. § 2251, a federal court may stay state proceedings while a federal habeas corpus proceeding is pending, but held that no such proceeding was pending because a "`motion for a stay and for appointment of counsel [is not] the equivalent of an application for habeas relief.'"  Id. (citation omitted).

6

inquiry of statutory construction: whether a capital defendant's right under 21 U.S.C. § 848(q)(4)(B) to qualified counsel in "any post-conviction proceeding under sections 2254 or 2255 of Title 28" and a district court's jurisdiction under 28 U.S.C. § 2251 to enter a stay of execution "in a habeas corpus proceeding" adhere prior to the filing of a legally sufficient habeas corpus petition.[0]  The Court determined that they did.

---

[0]  The Supreme Court reversed.

The Supreme Court was required to construe the meaning of and interplay among 21 U.S.C. § 848(q)(4)(B) and 28 U.S.C. §§2251, 2254, 2255.

Section 848(q)(4)(B) states:

### § 848.  Continuing criminal enterprise

### Appeal in capital cases; counsel for financially unable defendants

(B) In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

21 U.S.C. § 848(q)(4)(B).

Sections 2254 and 2255 provide in pertinent part:

### § 2254.  State custody; remedies in Federal courts.

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in

7

The Court held first that "[t]he language and purposes of § 848(q)(4)(B) and its related provisions establish that a right to appointed counsel includes a right to legal assistance in the preparation of a habeas corpus application[,] . . . [such] that a `post conviction proceeding' within the meaning of §848(q)(4)(B) is commenced by the filing of a death row

violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

### § 2255.  Federal Custody; remedies on motion attacking sentence

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Id. § 2255.

Section 2251 states:

### § 2251.  Stay of State court proceedings

A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

Id. § 2251.

8

defendant's motion requesting the appointment of counsel for his federal habeas corpus proceeding." Id. at 2572-73 (footnote omitted). The Court further held that once a capital defendant invokes his right to appointed counsel, a federal court also has jurisdiction under 28 U.S.C. § 2251 to enter a stay of execution because the language in 21 U.S.C. § 848(q)(4)(B), i.e., "any post conviction proceeding under sections 2254 or 2255 of Title 28", and the language in 28 U.S.C. § 2251, i.e., "habeas corpus proceeding", refer to the same process. Id. at 2573.

The Court made clear, however, that its holding did not grant defendants a right to an automatic stay of execution; that the decision to grant or deny a motion for stay is committed to the district court's sound discretion; and that a "dilatory" defendant's request for a stay may be denied under the appropriate circumstances:

> This conclusion by no means grants capital defendants a right to an automatic stay of execution. Section 2251 does not mandate the entry of a stay, but dedicates the exercise of stay jurisdiction to the sound discretion of a federal court. Under ordinary circumstances, a capital defendant presumably will have sufficient time to request the appointment of counsel and file a formal habeas petition prior to his scheduled execution. But the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims. Where this opportunity is not afforded, "[a]pproving the execution of a defendant before his [petition] is decided on the merits would clearly be improper." On the other hand, if a dilatory capital defendant inexcusably ignores this opportunity and flouts the available processes, a federal court

9

> presumably would not abuse its discretion in
> denying a stay of execution.

Id. at 2573 (emphasis added) (citation omitted).


## III.

Before we consider the merits of the district court's decision to deny Duffey a stay of execution, we must confirm that the court's jurisdiction was properly invoked, for we agree with the Court of Appeals for the Sixth Circuit that "[w]hat can best be called a `McFarland stay' is not available for every death row prisoner, but only for those in McFarland's circumstances". In Re Parker, 49 F.3d 204, 213 (6th Cir. 1995).[0] Like the defendant in McFarland, however, Duffey was an uncounseled, pro se prisoner who commenced an action in federal court seeking an attorney and a stay of execution in order to file a legally competent petition for a writ of habeas corpus. Because Duffey was unrepresented, he properly exercised his statutory right to appointed counsel under 21 U.S.C. § 848(q)(4)(B) which, in turn, invoked the stay jurisdiction of the district court under 28 U.S.C. § 2251.

---

[0] There the court of appeals held that the district court was without jurisdiction to issue a "McFarland" stay where the defendant asked the district court to appoint the attorney who already represented him and to issue an indefinite stay of execution to give counsel more time to file a habeas corpus petition. In Re Parker, 49 F.3d 204 (6th Cir. 1995). In Steffen v. Tate, 39 F.3d 622 (6th Cir. 1994), the defendant sought a federal court stay of execution to enable his counsel to pursue additional state remedies on his behalf.

In both of these cases, the court of appeals reasoned that the district court's jurisdiction was not necessary to give effect to the statutory right to counseled federal habeas review. In Re Parker, 49 F.3d at 210–11; Steffen v. Tate, 39 F.3d at 624–25.

10

We thus conclude that the court had jurisdiction in this case. We turn now to the district court's decision that Duffey was not entitled to a stay of execution.

IV.

We first consider the district court's findings of fact. Our standard of review is quite high; we may set aside the court's findings only for clear error.[0] Sullivan v. Cuyler, 723 F.2d 1077, 1082 (3d Cir. 1983).

Duffy argues that the evidence conclusively establishes that he was ignorant of post-conviction processes; that during the entire period between the Pennsylvania Supreme Court's affirmance of his conviction and sentence in 1988 and until just before the warrant was signed in 1994, he mistakenly believed that he was represented by counsel who was handling his "appeals"; and that he was intellectually incapable of the thought and planning that necessarily underlie a deliberate decision to delay the pursuit of one's rights.

Based on our careful review of the record, however, we conclude that the district court's factual determinations to the contrary are amply supported by the record. Several items of proof sustain the court's finding that Duffey was aware of the

_____

[0] A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed". United States v. United States Gypsum Co., 333 U.S. 364, 394-95 (1948). Further, we will not disturb the district court's findings simply because we are convinced that we would have decided the case differently. Anderson v. Bessemer City, N.C., 470 U.S. 564, 574 (1985).

11

existence of federal and state procedures for post-conviction review.  In correspondence to his mother, Duffey repeatedly requested that she send him a copy of another prisoner's habeas corpus petition; a fellow death row prisoner whom Duffey described as a "big brother" was well-versed in post-conviction process; information about collateral challenges to convictions and sentences was ever-present in the environment in which Duffey had resided for almost ten years.  In addition, Duffey referred to the case of <u>Griffin v. Illinois</u>, 351 U.S. 12 (1956),[0] in a knowledgeable way in a letter he wrote to his mother and in a motion he filed in the state court requesting a copy of his trial transcript; and during his years on death row, Duffey was in contact with Pamela Tucker, a one-time member of the Western Pennsylvania Coalition against the Death Penalty and the Project Director of the Pennsylvania Capital Case Monitoring Project who sent prisoners, including Duffey, at least one update regarding developments in Pennsylvania death penalty cases which mentioned the "[Post Conviction Relief Act]".

---

[0]       In <u>Griffin</u>, the defendants filed a petition under the Illinois Post-Conviction Hearing Act, alleging, <u>inter</u> <u>alia</u>, that the only impediment to full appellate review of their respective convictions was a lack of funds to buy a trial transcript and that the State's refusal to afford full appellate review solely because of their poverty was a denial of due process and equal protection.  The defendants' petition was dismissed and the Illinois Supreme Court affirmed, solely on the ground that the petition did not raise a substantial state or federal constitutional question.  Holding that the defendants' constitutional rights had been violated, the Court remanded and instructed the Illinois Supreme Court to provide the defendants with adequate and effective appellate review.  <u>Griffin v. Illinois</u>, 351 U.S. 12, 13-26 (1956).

We also find that the evidence relating to Duffey's and his mother's conduct both before and after the Pennsylvania Supreme Court's October, 1988 affirmance of Duffey's conviction and sentence supports the court's finding that Duffey knew that he did not have legal counsel and that post-conviction remedies were not being pursued following the affirmance. The record reveals that during the time that Duffey's case was in trial and on direct appeal, he and his mother communicated by letter or telephone with his attorneys on a variety of matters; once Duffey received word of the affirmance, however, neither he nor his mother had contact with any lawyer about the status of his case. Moreover, a statement by Duffey in a 1991 letter to Pamela Tucker that he would know "something" about his case "once [he] [got] a [w]arrant signed" also supports the district court's factual finding that Duffey was aware that post-conviction challenges were not pending from October of 1988 to September of 1994.

With regard to Duffey's deliberative capacities, the Resource Center introduced expert testimony to establish that Duffey could not reason abstractly due to his intellectual and emotional deficiencies and the medication he was taking. The Commonwealth countered with expert testimony to show that Duffey was capable of assimilating information, implementing plans and appreciating the consequences of his actions. Thus the hearing on this issue was a dispute among experts, offering the district court two conflicting perspectives of Duffey's abilities. Crediting the Commonwealth's view, the court found that Duffey was competent and capable of deliberately deciding not to

13

challenge his conviction and sentence until a warrant was signed. We will not disturb this finding because it is "well-established that `[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous'", and in a battle of experts, the factfinder "'decide[s] the victor'". Lansford-Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209, 1216 (3d Cir. 1993) (quoting Anderson v. Bessemer City, N.C., 470 U.S. 564, 574 (1985) and citing Mendes-Silva v. United States, 980 F.2d 1482, 1487 (D.C. Cir. 1993)).

As to Duffy's decision to delay, the comments Duffey and his mother made in correspondence to the effect that "no news was good news" and that it would be unwise to call attention to his circumstances support the court's finding that Duffey did indeed decide to wait for a death warrant to issue before pursuing post-conviction process and that he understood that, by putting off the invocation of post-conviction processes until then, he could postpone his sentence. Moreover, the court correctly found that the record did not contain any proof that the Commonwealth prevented Duffey from pursuing his rights.

Finally, given the undisputed evidence the Resource Center submitted showing how severely limited its means are, the court's finding that the Center pursued this matter in good faith will not be set aside.

Accordingly, we conclude that the district court's findings of fact are not clearly erroneous.

14

V.

We next address the district court's interpretation of the instruction in <u>McFarland</u> concerning the denial of a stay to a dilatory defendant who "inexcusably ignores" certain rights relating to habeas review and "flouts the available processes". Since we view the Court's instruction as a legal standard to be applied to the facts, our review is plenary. <u>Sullivan v. Cuyler</u>, 723 F.2d 1077, 1082 (3d Cir. 1983).

We begin by stating explicitly what was implicit in the district court's decision:  that the opportunity and processes of which the Supreme Court spoke in the passage at issue, <u>supra</u> pp. 9-10, include the right to federal habeas counsel, time for that counsel to prepare a habeas petition, and available state remedies.  We believe that the Court's antecedent reference in that passage to a capital defendant's "right to counsel" and counsel's right "meaningfully to research and present a defendant's habeas claims", <u>McFarland v. Scott</u>, ___U.S.___, 114 S. Ct. at 2573, as well as the long-held principle, now codified in 28 U.S.C. § 2254(b),[0] that a state defendant must exhaust state remedies in order to receive federal habeas review, compel this result.  See <u>Ex Parte Royall</u>, 117 U.S. 241 (1886) (holding that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act).  Moreover, the exhaustion of

---

[0]    Section 2254(b) provides:

**§ 2254.  State custody; remedies in Federal courts.**

**(b)** An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State curt shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

28 U.S.C. § 2254(b).

state remedies doctrine leads us to conclude that the district court was correct to consider the question of Duffey's delay in asking for federal habeas relief, not from the date that the death warrant issued on September 22, 1994, as Duffey urges, but from the date that Duffey could have initiated state post-conviction process, which was some six years earlier upon resolution of his direct appeal on October 14, 1988. In this regard, we also point out that delay in this context does not refer to the mere passage of time, but to a defendant's postponing the initiation of any of the steps that lead to habeas review.

B.

Turning to the standard the district court used to determine whether, under McFarland, Duffey should be granted a stay of execution despite his delay, we note that the court required Duffey to establish "cause" to excuse his failure to pursue available post-conviction processes in an expeditious fashion. By doing so, the court borrowed directly from the "cause and prejudice" or "independent state ground" test of Wainwright v. Sykes, 433 U.S. 72 (1977), which bars federal habeas review where a defendant has failed to comply with a state procedural rule unless the defendant shows "cause" for his failure to comply with a state procedural requirement and actual "prejudice" as a result of the constitutional violations he presents in federal court.

We disagree with the district court's analogy to Sykes for two reasons. First, we do not see, nor has the Commonwealth

17

of Pennsylvania shown us, that the basis for the standard -- a state procedural requirement -- is present here. The Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 et seq., does not impose a time period within which a defendant must file a petition for collateral review. Moreover, it is standard practice in Pennsylvania for defendants to pursue an initial, counseled PCRA petition only after a death warrant has issued and for the Pennsylvania courts to grant stays of execution to defendants in these circumstances. See, e.g., Commonwealth v. Henry, No. 849-1986 (C.P. Northampton Cty. March, 1995, and cases cited therein). Second and more importantly, we cannot discern any basis in McFarland for the district court's approach. Had the Supreme Court intended the courts to apply the standard enunciated in Sykes when deciding whether a dilatory defendant may receive a stay, we believe the Court would have said so. Thus, even assuming the presence of a state procedural default, we conclude that Sykes does not control.

It remains for us, therefore, to determine what standard regarding the denial of a stay was announced by the Court in McFarland. We think the best source for the standard lies in the language the Court used to render its decision. Accordingly, we turn directly to McFarland's critical passage, supra pp. 9-10, and we first observe that delay alone is not dispositive; the Court referred to denying a stay not just to a "dilatory" defendant, but to a defendant who has also behaved in a particular manner and displayed a certain attitude with regard to the opportunity for counseled habeas review and available

18

processes. The words the Court chose to describe the conduct it denounced -- "inexcusably ignore" and "flout" -- connote a knowing disregard, which borders on contempt for and a turning away from, one's federal and state rights. In our view, these words are tantamount to the definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464 (1938): "an intentional relinquishment or abandonment of a known right or privilege". We, therefore, believe that the Court instructed in McFarland that a district court would not abuse its discretion in denying a stay to a defendant who delayed pursuit of habeas relief and whose actions constitute a waiver of the right to counseled and meaningful habeas review and available state processes. In this regard, we adopt the definition of waiver from Johnson v. Zerbst as the guiding standard.[0]

---

[0]    In Johnson v. Zerbst, 304 U.S. 458 (1938), the Court addressed a defendant's waiver of the Sixth Amendment right to the assistance of counsel.

The dissent's characterization of our analysis notwithstanding, we do not "import Johnson v. Zerbst's `waiver' requirement into McFarland" because we believe that the "right to appointed counsel in § 848(q)(4)(B) occupies the same venerated status as the Sixth Amendment right to counsel." (Dissent Typescript at 11-12). Our holding is premised, as we stated, on our interpretation of the language the Supreme Court used in the McFarland opinion.

In our view, the disagreement between the majority and the dissent in this case is straightforward; it is a disagreement over what the Supreme Court meant in McFarland when it stated that a "dilatory capital defendant" who "inexcusably ignores this opportunity and flouts the available processes" may be denied a stay of execution. McFarland v. Scott, ___ U.S. ___, 114 S.Ct. at 2573. As we understand it, the dissent's position is that with these words the Supreme Court invoked the equitable doctrine of unclean hands, inviting a district court to deny a McFarland stay to a defendant who engaged in inequitable conduct. Applying

19

We further hold that a defendant's delay and waiver, which are in the nature of a defense to the stay to which a defendant would otherwise be entitled, is for the State to prove. This allocation of the burden of proof is consistent with the manner by which defenses are typically proven, <u>Metzel v.</u>

---

this general principle to the facts at hand, the dissent would hold that an uncounseled defendant who created exigent circumstances by purposefully delaying the pursuit of post-conviction processes until a death warrant issued, is guilty of unclean hands, and, thus, may be denied a stay of execution pending the preparation and disposition of a first habeas corpus petition. Again, focusing on the Supreme Court's words in <u>McFarland</u>, our difficulty with the dissent's position is two-fold. First, we believe that they demand a more exacting standard than the dissent's unclean hands principle. Second, we believe that they require something more than mere delay, even if deliberate, on a defendant's part to disentitle him to a stay.

To be sure, "`habeas corpus has traditionally been regarded as governed by equitable principles'". <u>Sanders v. United States</u>, 373 U.S. 1, 17 (1963) (quoting <u>Fay v. Noia</u>, 372 U.S. 391, 438 (1963)). We do not, however, agree with the dissent's view that "abuse-of-the writ" or "misuse-of-the-writ" jurisprudence supports the application in a <u>McFarland</u> situation of an unclean hands doctrine under which delay alone is sufficient to deny a stay of execution. (Dissent Typescript at 6-7). <u>See</u>, <u>e.g.</u>, <u>Gomez v. United States Dist. Court</u>, 503 U.S. 653, 654 (1992) (per curiam) (vacating a stay of execution where petitioner failed to show cause for not raising the claim that his execution by lethal injection would violate the Eighth Amendment in four prior federal habeas petitions and where "[t]here [was] no good reason for this abusive delay, which [was] compounded by last-minute attempts to manipulate the judicial process."); <u>McClesky v. Zant</u>, 499 U.S. 467 (1991) (holding that the cause and prejudice standard enunciated in <u>Wainwright v. Sykes</u> applies to determine whether the failure to raise a claim in the first round of habeas review should be excused in a subsequent petition); <u>Lonchar v. Thomas</u>, 58 F.3d 590 (11th Cir.) (vacating a stay of execution where petitioner expressly refused to pursue state collateral remedies, consistently waited until the day of execution to seek relief, and openly sought federal habeas relief, not to vindicate his constitutional rights, but to delay his execution so that the method of execution may be changed to allow him to donate his organs), <u>cert. granted</u>, ___ U.S. ___, 115 S. Ct. 2640 (1995).

20

<u>Leininger</u>, 57 F.3d 618, 622 (7th Cir. 1995), and is, moreover, in keeping with the traditional application of the <u>Johnson v. Zerbst</u> waiver standard.  <u>See</u> <u>Brewer v. Williams</u>, 430 U.S. 387, 404 (1977) ("[A]s a matter of federal constitutional law . . . it was incumbent upon the State to prove `an intentional relinquishment or abandonment of a known right or privilege.'")(quoting <u>Johnson v. Zerbst,</u> 304 U.S. at 464).[0]

VI.

The application of the standard we have enunciated to the evidence in this case is not difficult.  Although we do not quarrel with the district court's ultimate finding that Duffey deliberately decided to postpone the pursuit of collateral challenges to his conviction and sentence until after a death warrant issued, it alone cannot sustain the court's conclusion that Duffey inexcusably ignored and flouted relevant rights and processes under our waiver standard.  Indeed, we find the record devoid of any proof whatsoever that Duffey intentionally relinquished or abandoned his rights to counseled and meaningful habeas review or to available state remedies.[0]  Thus, we conclude

---

[0]    Although that traditional application of the <u>Johnson v. Zerbst</u> standard of which the Court spoke in <u>Brewer v. Williams</u>, 430 U.S. 387, 404 (1977), involved the waiver of the constitutional right to the assistance of counsel, we do not see any reason for not requiring the State to bear the same burden of proof when the waiver involves the statutory right to counseled federal habeas review under 21 U.S.C. § 848(q)(4)(B) and the right to state post-conviction remedies.

[0]    We contemplate that proof of a defendant's waiver will frequently be "verbal"; that is, comprised of the words that a defendant has spoken or written which show that he or she has intentionally relinquished or abandoned his or her federal right

21

that under <u>McFarland</u> the district court's decision to deny Duffey a stay was not consistent with a sound exercise of discretion.

We do not reach this decision lightly and we are, of course, mindful of the Commonwealth's interest in seeing that criminal judgments and sentences are carried out in a orderly fashion. We are also, however, aware of the Commonwealth's desire to ensure that capital punishment comports with the Constitution. <u>Commonwealth v. McKenna</u>, 476 Pa. 428, 383 A.2d 174 (1978). We believe that the entry of a stay in this particular case does not upset the Commonwealth's capital punishment process but, rather, guarantees that the death penalty will not be carried out unless the habeas review to which this defendant remains entitled demonstrates that his execution would be lawful.

## VII.

For the foregoing reasons, we will reverse the district court's order denying Duffy a stay and remand to the court for entry of an order granting Duffey a stay of execution pending the presentation of a petition for a writ of habeas corpus[0] once the state courts have ruled on his post-conviction petition.

---

to counseled habeas review and applicable state remedies. We further contemplate that evidence of waiver will also involve a defendant's actions. We do not, as the dissent suggests, require that the Commonwealth prove waiver by showing that a defendant knew specifically of the existence of 21 U.S.C. § 848(q)(4)(B) and engaged in what amounts to a colloquy forgoing his or her right to a government-supplied attorney under the statute. (Dissent Typescript at 10, 15-16).

[0] During the December, 1994 hearing, the Resource Center clarified that Duffey was asking for a stay pending the presentation of a petition for a writ of habeas corpus and would

Duffey v. Lehman, No. 94-9003

COWEN, Circuit Judge, dissenting.

The district court found as a matter of fact that Steven Duffey sat on death row for six and one-half years after his conviction had been affirmed and, despite being aware of the existence of both state and federal post-conviction remedies, intentionally declined to invoke them for the specific purpose of delay. Based on these findings the district court concluded that Duffey had "inexcusably ignore[d] [post-conviction remedies] and flout[ed] the available processes." McFarland v. Scott, ___ U.S. ___, ___, 114 S. Ct. 2568, 2573 (1994). The court, therefore, denied Duffey's request for a stay of execution under 28 U.S.C. §2251 while counsel appointed under 21 U.S.C. § 848(q)(4)(B) prepared and filed a first petition for habeas corpus.

The Majority concludes, as do I, that the district court's factual findings are not clearly erroneous. Indeed, they are amply supported by record evidence. The Majority, however, has discovered a "waiver" requirement in McFarland's "inexcusably ignores" language. Applying it to the district court's factual findings, the Majority holds that the district court abused its discretion in denying a stay under McFarland because the record

leave it to appointed counsel to ask for a stay beyond that point for the duration of habeas review.

23

contains no evidence that Duffey affirmatively "waived" his right to appointed habeas counsel.

I find no such waiver requirement in <u>McFarland</u>. In my view, an inmate who purposely declines to pursue known post-conviction remedies for the specific purpose of delaying execution presents the quintessential case of "inexcusably ignor[ing] .      .      . and

flout[ing]."  Such an inmate comes into court with "unclean hands" and, thus, forfe

right to have a federal court invoke its equity jurisdiction under § 2251 to inter

state proceedings.  Because that is just what Duffey did, the district court's deci

deny a stay of execution was consistent with a sound exercise of discretion.  I th

must respectfully dissent.  I am, however, in substantial agreement with Parts I-IV

Majority Opinion.

## I.

## A.

In 1988 Congress amended federal law to provide indigent death-row

wishing to pursue federal habeas relief with a government-supplied lawyer to prep

file the petition.  See 21 U.S.C. § 848(q)(4)(B).  This amendment created an ine

tension with 28 U.S.C. § 2251, which permits a federal judge to stay state proc

only when a habeas corpus proceeding is "pending" in federal court.  Typica

proceeding was considered pending for purposes of § 2251 only when a formal petit

been filed.  Thus, prior to McFarland, death-row inmates conceivably could ha

executed before their appointed attorneys had an adequate opportunity to prepare a

their petitions, since in those circumstances a federal court would lack subject

jurisdiction to stay an execution.

In 1994 the Supreme Court alleviated this apparent unfairness by esse

deeming an unrepresented death-row inmate's request for counsel under § 848(q)(4)(E

a pending habeas proceeding for purposes of § 2251.  McFarland, ___ U.S. at ___,

Ct. at 2568.  Accordingly, as long as there has been a motion for the appoint

counsel under § 848(q)(4)(B), a federal court has subject-matter jurisdiction under

to stay state proceedings without running afoul of the Anti-Injunction Act. 28 U

2283.

## B.

25

Two separate and distinct concepts underlie the <u>McFarland</u> Court's reason

analysis.  I refer to them as "stay jurisdiction" and "stay discretion."  The ra

for <u>McFarland</u>'s "stay jurisdiction" holding--that a request for counsel consti

"pending" proceeding under § 2251--is understandable.  The Court believed that w

unrepresented death-row inmate wishes to invoke his statutory right to have an a

file a petition for habeas corpus, federal courts should have the <u>power</u> to ensure t

state will not execute the inmate before the petition has been filed.  Otherwi

right to an attorney free of charge would be meaningless.  <u>McFarland</u>, ___ U.S. at _

S. Ct. at 2573 ("[T]he right to counsel necessarily includes a right for that

meaningfully to research and present a defendant's habeas claims.  Where this oppo

is not afforded, approving the execution of a defendant before his petition is de

the merits would clearly be improper.") (internal quotation marks, alteration and c

omitted).

The Court warned, however, that its "conclusion by no means grants

defendants a right to an automatic stay of execution."  <u>Id.</u> at ___, 114 S. Ct. a

On the contrary, in the "stay discretion" portion of its discussion, the Court c

that

> <u>[s]ection 2251 does not mandate the entry of a stay, but</u>
> <u>dedicates the exercise of stay jurisdiction to the sound</u>
> <u>discretion of a federal court</u>. Under ordinary circumstances,
> a capital inmate presumably will have sufficient time to
> request the appointment of counsel and file a formal habeas
> petition prior to his scheduled execution. But the right to
> counsel necessarily includes a right for that counsel
> meaningfully to research and present a defendant's habeas
> claims. Where this opportunity is not afforded, approving
> the execution of a defendant before his petition is decided
> on the merits would clearly be improper. On the other hand,
> <u>if a dilatory capital defendant inexcusably ignores this</u>
> <u>opportunity and flouts the available processes, a federal</u>
> <u>court presumably would not abuse its discretion in denying a</u>
> <u>stay of execution</u>.

26

Id. (emphasis added) (internal quotation marks, alteration and citation omitted).

the proper interpretation of the second highlighted portion in the above-quoted

that divides us today.

The "stay discretion" aspect of the McFarland Court's analysis a

describes three separate and distinct situations. In the first situation--i.e., "

ordinary circumstances"--no stay should issue because the inmate is represented

ample time in which to file the petition.  Indeed, the Court of Appeals for th

Circuit has gone so far as to hold that a district court lacks even the subject

jurisdiction to grant a stay in those circumstances.  In re Parker, 49 F.3d 204 (6

1995). The Parker court reasoned that an already-represented inmate who nevertheles

a formal request for counsel under §848(q)(4)(B) cannot confer subject-matter juris

on a federal court to issue a stay of execution under McFarland.  Accord Steffen v

39 F.3d 622 (6th Cir. 1994).

The second situation was the one presented in McFarland itself: where,

eve of execution, an unrepresented, nondilatory inmate who wishes to file a first p

for habeas corpus seeks counsel under § 848(q)(4)(B) and moves for a stay of ex

under § 2251.  In such a situation, a federal court would abuse its discretion as a

of law in not granting the stay. This is only logical.  It is both unfair and "in

to permit an inmate who, like McFarland, has been frantically attempting to pursu

conviction remedies to be executed simply because the state's execution ma

functions more efficiently than the pro se litigant.  In that situation it is the

not the inmate, that has created the exigency necessitating federal court equity re

the nature of a stay of execution.

The third situation is the one we confront in this case: where, on the

execution, an unrepresented, dilatory inmate invokes his right to counsel u

848(q)(4)(B) and moves for a stay under § 2251 so that appointed counsel can prep

file a habeas petition.  McFarland makes very clear that such inmates have no

27

entitlement to a stay of execution.  Since the Court referred to "inexcusably ign

and given the context of that statement, the Court was referring to inmates who, b

own calculated inaction, have created the exigency necessitating a stay of executi

the Court's view, because § 2251 "dedicates the exercise of stay jurisdiction to th

discretion of a federal court," ___ U.S. at ___, 114 S. Ct. at 2573, a capital i

dilatory conduct in creating the necessity of federal court intervention int

proceedings is a relevant (and in some cases a dispositive) factor in deciding whe

grant a stay of execution, even where it is the inmate's first petition.

To be sure, the McFarland Court's "inexcusably ignores" language m

considered a change in direction to the extent that it contemplates allowing an in

be executed before a first habeas petition can be considered on the merits.  Cf.

v. Thomas, 58 F.3d 590 (11th Cir.) (vacating stay and dismissing capital inmate'

habeas petition filed on the eve of execution solely for the purpose of delay)

granted, 115 S. Ct. 2640 (1995).  But McFarland is not to that extent inconsiste

prior Supreme Court cases dealing with dilatory habeas petitioners.  On the contra

Court has recognized that the remedy of federal habeas is an equitable one that

with its attendant stay provision, implicates sensitive federalism concerns. McCl

Zant, 499 U.S. 467, 493, 111 S. Ct. 1454, 1470 (1991); Barefoot v. Estelle, 463 U.

887, 103 S. Ct. 3383, 3392 (1983).

Because it is an equitable remedy, moreover, Justice Brennan wrote in San

United States that a petitioner's dilatoriness (i.e., "unclean hands") can bar

habeas relief:

> [A habeas petitioner's] conduct . . . may disentitle him to
> the relief he seeks. . . . Nothing in the traditions of
> habeas corpus requires the federal courts to . . . entertain
> collateral proceedings whose only purpose is to vex, harass,
> or delay.

28

373 U.S. 1, 17–18, 83 S. Ct. 1068, 1078 (1963), <u>overruled in part on other g</u>

<u>McClesky</u>, 499 U.S. at 467, 111 S. Ct. at 1470. More recently, the High Court gr

State's motion to vacate a stay of execution, noting that even apart from the ab

the-writ doctrine applicable to successive petitions,

> [e]quity must take into consideration the State's strong interest in proceeding with its judgment and [the inmate's] obvious attempt at manipulation. . . . There is no good reason for . . . abusive delay, which has been compounded by last-minute attempts to manipulate the judicial process. <u>A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief</u>.

<u>Gomez v. United States Dist. Court</u>, 503 U.S. 653, 654, 112 S. Ct. 1652, 1653 (199

<u>curiam</u>) (citations omitted) (emphasis added). Furthermore, this court has long red

that inequitable conduct can preclude a party from obtaining equitable relief:

> The guiding doctrine in this case is the equitable maxim that "he who comes into equity must come with clean hands." This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . . . .

<u>Monsanto Co. v. Rohm & Haas Co.</u>, 456 F.2d 592, 598 (3d Cir.) (quoting <u>Precision Ins</u>

<u>Mfg. Co. v. Automotive Co.</u>, 324 U.S. 806, 814, 65 S. Ct. 993, 997 (1945)), <u>cert.</u>

407 U.S. 934, 92 S. Ct. 2463 (1972). <u>Accord</u> <u>Northeast Women's Center v. McMonag</u>

F.2d 1342, 1354 (3d Cir.), <u>cert. denied</u>, 493 U.S. 901, 110 S. Ct. 261 (1989).

<u>McFarland</u>'s "inexcusably ignores" language is simply a logical extension

equitable principles set forth in <u>Gomez</u> and <u>Sanders</u>. Deliberately declining to

postconviction processes to delay execution constitutes inequitable conduct. Wh

conduct results in a last-minute application for equitable relief in federal court,

preclude an inmate from having a federal court invoke its equity jurisdiction to in

into state proceedings. Far from relying on "mere delay" or "delay alone," N

Typescript at 20 n.11, my interpretation of <u>McFarland</u> would permit denial of a st

29

where there has been <u>abusive</u> delay--that is, where the failure to invoke known col[lateral] processes is not the result of some force external to the inmate, but rather [the] product of a deliberate attempt to manipulate the remedy of federal habeas corpus[--] the Majority acknowledges is governed by equitable principles. <u>Id.</u> "Federal hab[eas is not] a means by which a defendant is entitled to delay an execution indefin[itely]." <u>Barefoot</u>, 463 U.S. at 887, 103 S. Ct at 3392.

### C.

Although I agree with the Majority that "[t]he application of the [<u>McF[arland]</u>] standard . . . to the evidence in this case is not difficult," Majority Typescript [at __,] I reach a contrary result. As Part IV of the Majority Opinion illustrates, the [record] developed below amply supports the district court's factual findings. The distric[t court] found: (1) "that [Duffey] was indeed aware that there were available post-con[viction] review processes for him," App. at 32; (2) that "[t]he evidence concerning his [mental] disorder, the prescription of a low dosage of Mellaril, is not the type of evider[ce that] would cause a court to determine that failure to take action should be excused," [App. at] 37-38; and (3) that "it was a deliberate decision on the part of Mr. Duffey not [to take] any action to challenge his convictions until a warrant had been signed." <u>Id.</u> at 3[4.]

Based on these findings, the district court announced its legal conc[lusion:] "[Duffey] certainly had the ability to understand that by delaying invoking [post-] conviction processes, he could obtain additional time, [an] additional stay, and fo[restall] the execution of a death warrant." <u>Id.</u> at 34-35. Since the district court's [factual] findings demonstrate conclusively that Duffey had "unclean hands," the court act[ed] within its discretion in denying Duffey's last-minute request to stay his execution[.]

### II.

Notwithstanding factual findings that track <u>McFarland</u>'s language nearly [word for] word, the Majority concludes that those findings are insufficient to justify the de[nial of] a stay. Instead, the Majority reverses and directs entry of a stay under <u>McFarla[nd.]</u>

30

matter of law.  Two distinct reasons appear to support the Majority's decision;
discuss them in turn.

**A.**

According to the Majority, the primary reason that the district court abu
discretion in denying the requested stay is because the State failed to prove that
"even though dilatory, . . . waive[d] his rights and remedies" under the waiver s
the Supreme Court enunciated in Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019
Majority Typescript at 2, 19
(emphasis added).  This new-found "waiver" requirement, according to the Major
implicit in and consistent with the McFarland Court's "inexcusably ignores . .
flouts" language.  But strict adherence to the Majority's caveat that "the best sou
the standard lies in the language the [McFarland] Court used," id. at 19, reveals t
disputed passage from McFarland in no way implicates the constitutional waiver s
the Majority has interpolated into it.

**1.**

The greatest difficulty with the Majority's analysis is that it confu
equitable concept of "unclean hands," which disentitles a party to equitable relie
"waiver."  As we recently observed in United States v. Goldberg, 67 F.3d 1092 (
1995), the "most commonly understood method of 'waiving' a constitutional right i
affirmative, verbal request."  Id. at 1099 (emphasis added).  If this is w
Majority's formulation requires, a stay of execution under § 2251 must issue as a
of law unless a state can prove that an inmate affirmatively said the words "I kno
right to a government-supplied attorney under § 848(q)(4)(B) and am choosing to for
But this belies reality because no inmate bent on waiting until the last minute to
post-conviction remedies will ever say those words within earshot of a state offici
for good reason.  Thus, no state could ever prove "inexcusably ignores . . . and
under the Majority's formulation.

31

Elaborating on its waiver requirement, however, the Majority insists

affirmative verbal waiver is unnecessary and that both words and conduct can be ind

of an inmate's "waiver" of "his or her right to counseled habeas review." M

Typescript at 22 n.13.  But nowhere does the Majority provide any examples of wo

conduct that would rise to the level of "waiver."  Nor does the Majority att

explain why the record in this case fails to satisfy its waiver standard.  If th

found by the district court in this case are insufficient to establish waiver un

Majority's view, then it is difficult to imagine any set of circumstances, other

affirmative verbal waiver which the Majority expressly disavows, see id., in which

of execution may be denied under McFarland.

McFarland's language contemplates that inequitable conduct can lead to

forfeiture of equitable relief under §2251 to which the inmate is otherwise entitl

matter of law. This is entirely consistent with notion that the equitable doct

"unclean hands" can bar relief in federal habeas, see Gomez, 503 U.S. at 654, 112

at 1653; Sanders, 373 U.S. at 17–18, 83 S. Ct. at 1078, even where it is the i

first petition. Lonchar, 58 F.3d at 590.

**2.**

The Majority imports Johnson v. Zerbst's "waiver" requirement into Mc

because it appears to believe that the right to appointed counsel in § 848(

occupies the same venerated status as the Sixth Amendment right to counsel. See M

Typescript at 19–21 & nn.11–12.  Because the Sixth Amendment right to counsel

"fundamental" to fair adjudication, Goldberg, 67 F.3d at 1097, counsel must be p

regardless of whether criminal defendants are aware of their rights.  Precisely f

reason the "waiver" standard enunciated in Johnson is a stringent one.  Based

analogy, the Majority essentially holds that states must provide habeas coun

indigent inmates unless and until the inmate affirmatively and verbally expr

contrary desire.

32

This both misstates and grossly exaggerates the role of § 848(q)(4)(B)

scheme of federal habeas. Unlike the Sixth Amendment, § 848(q)(4)(B) is nei

affirmative obligation nor a negative restriction on states. On the contrary,

simply "a funding statute [that] provides for the appointment of attorneys . .

defendants or habeas corpus petitioners <u>seeking</u> to vacate or set aside a death sen

<u>Jackson v. Vasquez</u>, 1 F.3d 885, 888 (9th Cir. 1993) (emphasis added). It is the

therefore, who must take the initiative. Even then, however, a stay of execution

effect to the right to counsel, once invoked, will not be forthcoming if the inmat

into federal court with unclean hands; that is, if he has "inexcusably ignore[

conviction remedies] and flout[ed] the available processes." <u>McFarland</u>, ___ U.S.

114 S. Ct. at 2573.

The Majority's view essentially converts the counsel-funding statute into

prohibition on executing death-sentenced inmates until a first habeas petition h

prepared and filed. But <u>McFarland</u>'s "stay discretion" analysis contemplates th

dilatory capital inmates could be executed before a first petition has been consid

the merits. The Majority's position, therefore, directly contravenes the Supreme

explicit admonition that its "conclusion by no means grants capital defendants a r

an automatic stay of execution." <u>Id.</u> at ___, 114 S. Ct. at 2573.

**3.**

There is a third difficulty with the "waiver" standard. If the Majo

indeed correct that the <u>McFarland</u> Court contemplated denying a stay only when th

been a true verbal waiver, then the Court's separate treatment of "stay discreti

"stay jurisdiction" was unnecessary; under the Majority's view the two merge.

As discussed earlier, the rationale for the Court's "stay jurisdiction"

is that if a defendant who seeks federal habeas relief and attempts to invoke his r

a government-supplied lawyer under § 848(q)(4)(B) is executed before the petition h

prepared and filed, the statutory right would be meaningless. But where an i

33

dilatory or otherwise--has affirmatively waived his right to a lawyer u[...]

848(q)(4)(B), <u>McFarland</u> indicates that a district court would lack subject[...]

jurisdiction under § 2251 even to consider the request. "[A] district cou[...]

jurisdiction to enter a stay of execution <u>where necessary to give effect to that st[...]</u>

<u>right</u>." <u>McFarland</u>, ___ U.S. at ___, 114 S. Ct. at 2574 (emphasis added). Since a [...]

execution logically cannot give effect to a statutory right that the inm[...]

affirmatively waived, the Majority's "waiver" standard effectively collapses <u>McFa[...]</u>

distinct "stay jurisdiction" and "stay discretion" discussions into a single inquir[...]

More significantly, collapsing <u>McFarland</u>'s "stay jurisdiction" and [...]

discretion" discussions into a single inquiry has the effect of placing the bu[...]

proof on the "inexcusably ignores . . . flouts" issue on the <u>inmate</u>. It is well-[...]

that the party seeking federal relief must plead and prove facts sufficient to demo[...]

a federal court's subject-matter jurisdiction. <u>See</u>, <u>e.g.</u>, <u>McNutt v. General [...]</u>

<u>Acceptance Corp.</u>, 298 U.S. 178, 189, 56 S. Ct. 780, 785 (1936); <u>Columbia Gas Trans[...]</u>

<u>Corp. v. Tarbuck</u>, 62 F.3d 538, 541 (3d Cir. 1995). If discretion to issue a stay[...]

only where there is jurisdiction to grant a stay, then a <u>prima</u> <u>facie</u> sho[...]

entitlement to a stay would require affirmative proof of nonwaiver. Because the M[...]

insists that the burden to demonstrate waiver is on the state, Majority Typescript[...]

21, its waiver analysis proves to be wholly unworkable.[0]

**B.**

---

[0]I agree with the Majority that the burden to show "inexcusably ignores . . . and [...] rests with the state, but I base that conclusion on the simple fact that <u>Mc[...]</u> expresses a presumption in favor of a stay. Since that presumption is rebutted on[...] the inmate has "inexcusably ignore[d] . . . and flout[ed]," the state should b[...] burden of demonstrating that an inmate has engaged in conduct that disentitles [...] equity relief that otherwise would issue as a matter of law. <u>See generally</u> <u>Cib[...]</u> <u>Corp. v. Bolar Pharm. Co., Inc.</u>, 747 F.2d 844, 855 (3d Cir. 1984) ("unclean hands[...] affirmative defense; burden of persuasion on party resisting opponent's reque[...] equitable relief), <u>cert. denied</u>, 471 U.S. 1137, 105 S. Ct. 2678 (1985).

34

The second reason the Majority relies on to support its decision to rever

flows directly from its constitutional waiver requirement. The Majority app

believe that when the Supreme Court referred to an inmate who "inexcusably ignor

opportunity and flouts available processes," it was requiring that the inmate

specific awareness of the federal right to counsel codified in § 848(q)(4)(B):

> [T]he opportunity and processes of which the Supreme Court spoke in the passage at issue . . . include the right to federal habeas counsel . . . . We believe that the Court's antecedent reference in that passage to a capital defendant's 'right to counsel' . . . compel[s] this result.

Majority Typescript at 16. Since there was no record evidence that Duffey speci

was aware of his statutory right to a government-supplied attorney, the a

continues, Duffey could not have knowingly and intelligently "waived," or "inex

ignore[d]," that right as a matter of law. I disagree.

In my view, the McFarland Court's reference to "this opportunity" was ac

to state and federal post-conviction processes in a general sense, not to the c

funding statute specifically. As noted above, the statutory right to counsel obtai

if and when an inmate decides to initiate federal habeas relief. But inma

purposely decline to invoke state or federal collateral remedies solely to delay ex

are intentionally subjecting themselves to the very risk that a stay of executio

McFarland is designed to avoid: execution prior to having a federal court adjudicat

constitutional claims on the merits. Thus, a specific awareness of § 848(q)(4

irrelevant to the McFarland inquiry; rather, the deliberate creation of

circumstances necessitating federal court intervention into state proceedings sh

the central focus.

There is a more common-sense reason for interpreting the Supreme

reference to "this opportunity" as relating to collateral remedies generally.

inmates who are cognizant of state and federal post-conviction processes but

35

determined to wait until a death warrant has been signed to invoke them will

motivated to seek relief any sooner simply because they know that a government-s

attorney stands ready and willing to prepare and file their habeas petitions.  Th

Circuit's recent observation about the current state of death-penalty litigation o

that even

> counsel for a death-sentenced criminal never wishes to file a habeas corpus petition unless that is the last-ditch way to avoid an actual execution, when the prisoner is more concerned with avoiding execution than with receiving a final adjudication of his claims. . . . Therefore, <u>it is almost always in the interest of a death-sentenced prisoner to delay filing that petition as long as possible</u>.

<u>Steffen</u>, 39 F.3d at 625 (emphasis added).  If <u>counsel</u> for a capital defendant ac

his client's best interests will deliberately wait until the eve of execution to

first habeas petition, then an unrepresented inmate's specific awareness of a st

counsel-funding provision is unlikely to alter the inmate's behavior.  The

statute, therefore, should not be dispositive of <u>McFarland</u>'s dilatoriness inquiry.

### C.

Finally, I agree with the Majority that the district court erred in loc

the "cause" prong of the "cause and prejudice" test to determine whether Duffey's i

of available postconviction remedies was "inexcusable" under <u>McFarland</u>.

Majority Typescript at 18.[0]  The "cause and prejudice" standard is not implicated

<u>McFarland</u> Court's language and, thus, is irrelevant.

In any event, "cause," as the Majority observes, refers to a deliberate

of a state <u>procedural</u> requirement, whereas <u>McFarland</u> is concerned with the fai

invoke either state or federal <u>substantive</u> remedies.  Indeed, the "cause" ana

---

[0]As the Majority recognizes, the factors the district court analyzed under its
analysis--possible state interference with Duffey's attempts to litigate and co
impairment--certainly were relevant to the question whether there was some force e
to Duffey that prevented him from invoking postconviction remedies.  To this
therefore, the district court's legal error was harmless, because it ultimately l
more developed factual record.

36

illogical, for while the failure to initiate a state postconviction proceeding

death warrant has been signed may be "excusable" (because it is permissible) unde

procedural law, it very well may simultaneously constitute "inexcusably ignor[ing

and flout[ing]" under McFarland. That is so because, as the Majority observ

exhaustion doctrine requires that a habeas petitioner first present his claims

state courts before obtaining federal habeas relief. See 28 U.S.C. § 2254(b); E

Royall, 117 U.S. 241, 6 S. Ct. 734 (1886); see also Coleman v. Thompson, 501 U.

731, 111 S. Ct. 2546, 2554 (1991). Since exhaustion of state remedies is a ne

predicate to obtaining federal habeas relief, a capital inmate should not be permi

circumvent McFarland's warning to dilatory inmates simply by deliberately ignorin

post-conviction remedies as a way of delaying federal habeas relief and, ulti

execution. Cf. Steffen, 39 F.3d at 622 (no jurisdiction to issue  McFarland

represented inmate so that counsel can pursue novel claims in state court); c

Sterling v. Scott, 57 F.3d 451 (5th Cir. 1995) (no right to counsel under § 848(c

to pursue unexhausted claims in state court). Thus, I agree with the Majority t

"cause and prejudice" test is wholly inapposite to McFarland's dilatoriness inquiry

**IV.**

The Supreme Court in McFarland specifically stated that a stay of execut

be denied if a death-row inmate "inexcusably ignores [post-conviction remedies] and

the available processes." McFarland, ___ U.S. at ___, 114 S. Ct. at 2573. The c

court found that for over six years after his direct appeal had been exhausted,

Duffey declined to attack collaterally his conviction and sentence simply to postp

execution. Those findings are amply supported by the record. The district

decision to deny the stay, therefore, was well within its discretion under § 2

consistent with the dictates of McFarland. Because I fear that the Majority's "

standard will render the issuance of a stay under § 2251 automatic in this C

37

notwithstanding the <u>McFarland</u> Court's express admonition to the contrary, I respe

dissent.